# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| _____ ) | |
| DIDYME KALENGA and ) | |
| ARNOLD BANKETE, ) | CIVIL ACTION NO: <u>19-1969</u> |
| on behalf of themselves and all ) | |
| others similarly situated, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
|     v. ) | |
| ) | |
| IRVING HOLDINGS, INC. ) | |
| ) | |
| ) | |
|     Defendant. ) | |
| _____) | |

## COLLECTIVE ACTION COMPLAINT

### INTRODUCTION

Plaintiffs, Didyme Kalenga and Arnold Bankete (collectively, "Plaintiffs") individually and on behalf of all persons similarly situated, file this Collective Action Complaint against Irving Holdings, Inc. ("Defendant"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA").

Plaintiffs allege that though Defendant classified them and other similarly situated transportation drivers as independent contractors, they were in fact Defendant's employees under the FLSA. Due to Defendant's unlawful misclassification of Plaintiffs and putative collective members as independent contractors, Defendant has violated the FLSA by failing to pay them the statutory minimum wage and overtime as required by Sections 6 and 7 of the FLSA.

Plaintiff Kalenga also alleges that Defendant has engaged in unlawful retaliation in violation of the FLSA, 29 U.S.C. § 215(a)(3) by reducing the amount of work assigned to him in response to his complaints of Defendant's unlawful labor practices and his efforts to initiate this lawsuit against Defendant regarding the unlawful acts described herein.

## PARTIES

1.      Plaintiff Didyme Kalenga is an adult resident of Euless, Texas.  From approximately January 2017 to present, Plaintiff Kalenga has provided services as a transportation driver for the Defendant.  During the relevant time, he was Defendant's employee as that term is defined in the FLSA. *See* 29 U.S.C. § 203(d).

2.      Plaintiff Arnold Bankete is an adult resident of Euless, Texas.  From approximately November 2018 to December 2018 and from approximately March 2019 to May 2019, Plaintiff Bankete provided services as a transportation driver for the Defendant.  During the relevant time, he was Defendant's employee as that term is defined in the FLSA. *See* 29 U.S.C. § 203(d).

3.      The above-named Plaintiffs brings this action on their own behalf and on behalf of all similarly situated individuals who drive (or drove) vehicles to provide paratransit and other non-fixed route transportation services on behalf of Defendant.[1]

4.      Defendant Irving Holdings, Inc. is a for-profit corporate entity, organized in Texas, with its headquarters (principal place of business) in Dallas County, Texas.  Defendant

---

[1]      The term "transportation driver" and class of drivers within the scope of this collective action expressly excludes drivers solely performing work for Defendant as taxicab drivers.  All drivers providing any other transportation services for Defendant are included within this collective action.

conducts business throughout the state of Texas, providing transportation services within the

Greater Dallas-Forth Worth Area.

## JURISDICTION AND VENUE

5.    The Court has original (federal question) jurisdiction over the FLSA claims

asserted in this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331.

6.    Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a), (b), and (c),

because Defendant Irving Holdings, Inc. maintains its corporate headquarters in Dallas County,

Texas and Defendant resides in Texas and is subject to personal jurisdiction in this District and

Division.

7.    Moreover, jurisdiction and venue are also proper where Defendant engages in

daily business activities in Texas and in this District and Division.

## FLSA COVERAGE

8.    At all times mentioned, Defendant has acted, directly or indirectly, in the interest

of an employer with respect to Plaintiff and the putative collective members.

9.    At all times mentioned, Defendant has been an employer within the meaning of

Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10.    At all times mentioned, Defendant has been an enterprise within the meaning of

Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

11.    At all times hereinafter mentioned, Defendant has been an enterprise engaged in

commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said

enterprise has had employees engaged in commerce or employees handling goods or materials that

have been moved in or produced for commerce by any person and that said enterprise has had and

has an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive

of excise taxes at the retail level, which are separately stated).

12.    At all times hereinafter mentioned, Plaintiffs and the putative collective members were individual employees who were engaged in commerce as required by 29 U.S.C. §§ 206-207.

13.    Specifically, Plaintiffs and the putative collective members are (or were) non-exempt employees who worked as transportation drivers for Defendant. Further, Plaintiffs and the putative collective members have handled materials and goods (e.g., Defendant's vehicles) that have been moved or produced in interstate commerce, which Defendant purchased or used in its business operation.

**FACTS**

14.    Defendant Irving Holdings, Inc. is a transportation company that provides both taxicab, paratransit, and other non-fixed route transportation services in the Greater Dallas-Fort Worth Area. Defendant's transportation drivers perform services integral to Defendant's business, pursuant to transportation services contracts that the Defendant enters into with other entities (e.g., Defendant contracts with the Dallas Area Rapid Transit ("DART") – a transit agency serving the Greater Dallas-Fort Worth Area).

15.    In order to provide the services offered to Defendant's customers, clients, and pursuant to its business agreements, Defendant relies upon transportation drivers (i.e., Plaintiffs and the putative collective members). Defendant classifies all of its drivers as independent contractors.

16.    Plaintiff Kalenga was initially hired to perform transportation services by the Defendant in approximately January 2017.[2] His duties are as follows: driving disabled

---

[2]    Plaintiff Kalenga previously worked for Defendant as a taxicab driver. He was hired by Defendant to perform distinct work as a transportation services driver in January 2017.

passengers, the elderly, and other individuals with special transportation needs while using Defendant's vehicle, according to the assignments and schedules provided by Defendant, consistent with Defendant's policies, and in furtherance of Defendant's contractual obligations to entities such as DART.

17.    Plaintiff Kalenga's standard schedule requires him to work nearly seventy (70) hours per week, and he is often required to work in excess of seventy (70) hours to comply with Defendant's dictates.

18.    Plaintiff Bankete was initially hired by the Defendant in approximately November 2018.  His duties are as follows: driving disabled passengers, the elderly, and other individuals with special transportation needs while using Defendant's vehicle, according to the assignments and schedules provided by Defendant, consistent with Defendant's policies, and in furtherance of Defendant's contractual obligations to entities such as DART.

19.    Plaintiff Bankete is regularly scheduled to work and in fact regularly works more than forty (40) hours per week to comply with Defendant's dictates.

20.    As a result of their misclassification as independent contractors, Plaintiffs and the putative collective members are not paid an overtime premium for hours worked in excess of forty (40) hours per week, despite routinely working more than forty (40) hours per week.

21.    In order to work as a transportation driver for Defendant, Defendant requires Plaintiffs and putative collective members to pay a weekly "stand fee" – a fee deducted from transportation driver's compensation check each week for the use of Defendant's vehicle. Defendant reserves unilateral control over the imposition of this "stand fee" and periodically changes the rate of the fee.  In recent months, the stand fee has ranged from approximately $350 to $500 per week per transportation driver.

22.     In addition to Defendant's practice of charging its drivers significant weekly "stand fees," the Plaintiffs incur significant expenses for the use of Defendant's vehicles including all gasoline oil and some maintenance expenses. In addition, Defendant can and does impose fines on the drivers for late pickups etc.  As a result of these deductions, expenses, and fines, Plaintiffs and the putative collective members are often compensated less than the minimum wage for all hours worked in a week.

23.     Plaintiffs and the putative collective members drive vans owned or controlled by the Defendant and typically provide paratransit or similar services (e.g., driving disabled individuals and the elderly)

24.     Plaintiffs and the putative collective members have been uniformly misclassified as independent contractors by the Defendant.

25.     While Plaintiffs and the putative collective members are supposedly independent contractors, they perform transportation services at the direction of Defendant and while using the Defendant's equipment (e.g., Defendant's vehicles).

26.     The Defendant's dispatchers contact Plaintiffs and putative collective members by email and phone to provide them a detailed manifest of their specific assignments (typically the day before each shift).

27.     Transportation drivers are instructed to complete assigned pickup and drop offs and detail their work history on a manifest form provided to drivers by the Defendant.

28.     Additionally, Defendant requires transportation drivers to accept coupons as a form of payment and instructs transportation drivers to maintain and deliver the coupons to the Defendant after completing their assignments.

29.     On information and belief, the Defendant reserves the right to control the ultimate payments made to transportation drivers and Defendant determines the amount of payments due to transportation drivers each pay period.

30.     Defendant controls the manner in which drivers are dispatched and trips are handled. For example, Defendant assigns drivers, such as the Plaintiffs, trips to complete at Defendant's direction – even if those trips are outside of the driver's standard work schedule.   Plaintiff Kalenga's typical schedule with the Defendant is from 5am to 5pm, Monday through Friday, and 5am to 2pm on Saturdays.  However, on numerous occasions, Defendant has unilaterally assigned Plaintiff Kalenga trips to be performed at approximately 4:30am.

31.     If transportation drivers decline or fail to perform work assigned by the Defendant, they are often disciplined by the Defendant.  For example, on information and belief, Defendant has a common practice of "fining" drivers for failing to accept assigned work, for arriving late to assigned pickups, or for getting into accidents (even if the driver is not at fault).

32.     Through the Defendant's hiring, scheduling, assignment, disciplinary, and pay practices, and in service of Defendant's business contracts, Defendant's cause transportation drivers to suffer or permit to work.  In fact, Defendant can prevent drivers from working on a temporary or permanent basis.

33.     The services provided by the Plaintiffs and putative collective members are in the usual course of, and indeed are an essential part of, Defendant's business.   In fact, on information and belief, Defendant has had to recruit and hire additional putative collective members in recent months to meet the demands of its business contracts and interests.

34.     Based on all the hours that Defendant required Plaintiffs (and requires other drivers) to spend providing transportation services to their customers and clients, there is little or

no time left for Plaintiffs to make trips for any other company besides Defendant. As a result, transportation drivers are economically dependent on Defendant.

35.    Defendant's misclassification of Plaintiffs and the putative collective members as independent contractors and the additional violations of the FLSA described above were willful and undertaken in bad faith.

36.    Plaintiff Kalenga has actively discussed his intention to challenge Defendant's labor practices, by taking legal action, with other drivers working for Defendant.

37.    On information and belief, Defendant has become aware that Plaintiff Kalenga is meeting with attorneys to discuss taking legal action against Defendant in response to the labor practices described above.

38.    On information and belief, Defendant has taken retaliatory actions against Plaintiff Kalenga, in response to his activism and efforts to challenge Defendant's labor practices, by canceling work trips assigned to Plaintiff Kalenga.

39.    On information and belief, Defendant's actions are designed to "chill" Plaintiff Kalenga's activism and to cause him to fear for his job.


**COLLECTIVE ACTION ALLEGATIONS**

40.    Plaintiffs asserts claims under the FLSA on behalf of themselves and all similarly situated drivers in Texas.

41.    Plaintiffs' FLSA claims should proceed as a collective action because Plaintiffs and the putative collective members worked pursuant to the common misclassification scheme described above under which Defendant did not pay drivers overtime premium when

transportation drivers worked more than forty (40) hours per week, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## COUNT I

### FAIR LABOR STANDARDS ACT–FAILURE TO PAY MINIMUM WAGES
### (INDIVIDUAL AND COLLECTIVE ACTION)

42.    Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

43.    Defendant's willful conduct in failing to ensure that its transportation drivers in Texas, with whom it has relied upon to perform a critical and integral component of its business services, receive the federal minimum wage, after accounting for the expenses they paid that were necessary to perform their job, violates the FLSA, 29 U.S.C. § 201, *et seq*.  This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

## COUNT II

### FAIR LABOR STANDARDS ACT–FAILURE TO PAY OVERTIME WAGES
### (INDIVIDUAL AND COLLECTIVE ACTION)

44.    Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

45.    Plaintiffs and the members of the proposed FLSA collective routinely worked in excess of forty (40) hours per workweek for Defendant.

46.    Defendant failed to pay Plaintiffs and the members of the putative FLSA collective at the rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty hours weekly as required by section 7(a) of the FLSA, 29 U.S.C. § 207(a).

47.    Plaintiffs and the members of the putative collective are entitled to back wages at

the rate of one-and-a-half times their regular rate of pay for all overtime hours worked in excess of forty hours per week, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b). The failure of Defendant to compensate Plaintiffs and the members of the putative collective for overtime work as required by the FLSA was knowing, willful, intentional, and done in bad faith.

48.     Plaintiffs and the members of the putative collective are also entitled to liquidated damages equal to the amount of unpaid overtime compensation due to them under the FLSA, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

49.     Plaintiffs and those similarly situated are also entitled to an award of reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 29 U.S.C. § 216(b).

## COUNT III

## FAIR LABOR STANDARDS ACT – RETALIATION

50.     Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

51.     Defendant has unlawfully retaliated against Plaintiff Kalenga in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), which makes it illegal for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ."

52.     29 U.S.C. § 215(a)(3) has been interpreted broadly to protect individuals such as Plaintiff Kalenga from retaliatory action for taking steps to vindicate their rights under the FLSA.

## DAMAGES

53.     Plaintiffs and collective members are entitled to recover compensation for the hours worked in which Plaintiffs and collective members were not paid at the federally mandated minimum wage rate.

54.     Plaintiffs and collective members are entitled to recover compensation for the hours worked over forty (40) in a workweek, but for which Plaintiffs and collective members were not paid at one-and-one-half times their regular rate.

55.     Plaintiffs and collective members are also entitled to an amount equal to all of the unpaid wages and fees as liquidated damages as Defendant's actions were not based upon good faith. *See* 29 U.S.C. § 216(b).

56.     Plaintiffs and collective members are entitled to recover attorneys' fees and costs as required by the FLSA. *See* 29 U.S.C. § 216(b).

57.     Plaintiff Kalenga is entitled to an order requiring Defendant to make him whole for any reduction in work or other retaliatory conduct that has occurred or that may occur during the pendency of this action.

## PRAYER FOR RELIEF

Plaintiffs (and those who join this action) pray that the Court enter a judgment against Defendant granting the following relief:

a.     An Order granting certification of this case as an FLSA collective action and permitting notice to be sent to the putative collective members;

b.     An award of damages for all unpaid wages, expenditures, costs, deductions, benefits, or other losses resulting from Defendant's misclassification, as described above;

c.      An award of damages and non-monetary damages for Defendant's retaliatory actions against Plaintiff Kalenga, as described above;

d.      Statutory liquidated damages, pursuant to the FLSA;

e.      Attorneys' fees and costs; and

f.      Such other legal and equitable relief as the Court deems just and proper.

DIDYME KALENGA and
ARNOLD BANKETE
on behalf of themselves and all
others similarly situated,

By their Attorneys,

/s/ Drew N. Herrmann
Drew N. Herrmann
Texas Bar No. 24086523
Pamela G. Herrmann
Texas Bar No. 24104030
HERRMANN LAW, PLLC
801 Cherry St., Suite 2365
Fort Worth, Texas 76102
(817) 479-9229
drew@herrmannlaw.com

Harold L. Lichten, *pro hac vice* anticipated
Zachary L. Rubin, *pro hac vice* anticipated
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA  02116
(617) 994-5800
hlichten@llrlaw.com
zrubin@llrlaw.com