UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DIDYME KALENGA and ARNOLD BANKETE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> IRVING HOLDINGS, INC. <br><br> Defendant. | CIVIL ACTION NO: 3:19-CV-1969-S |

## AMENDED COLLECTIVE ACTION COMPLAINT

### INTRODUCTION

Plaintiffs, Didyme Kalenga and Arnold Bankete (collectively, "Plaintiffs") individually and on behalf of all persons similarly situated, file this Collective Action Complaint against Irving Holdings, Inc. ("Defendant"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA").

Plaintiffs allege that though Defendant classified them and other similarly situated transportation drivers as independent contractors, they were in fact Defendant's employees under the FLSA. Due to Defendant's unlawful misclassification of Plaintiffs and putative collective members as independent contractors, Defendant has violated the FLSA by failing to pay them the statutory minimum wage and overtime as required by Sections 6 and 7 of the FLSA.

Plaintiff Kalenga also alleges that Defendant has engaged in unlawful retaliation in violation of the FLSA, 29 U.S.C. § 215(a)(3) by reducing the amount of work assigned to him in

response to his complaints of Defendant's unlawful labor practices and his efforts to initiate this lawsuit against Defendant regarding the unlawful acts described herein.

## PARTIES

1. Plaintiff Didyme Kalenga is an adult resident of Euless, Texas. From approximately January 2017 to present, Plaintiff Kalenga has provided services as a transportation driver for the Defendant. During the relevant time, he was Defendant's employee as that term is defined in the FLSA. *See* 29 U.S.C. § 203(d).

2. Plaintiff Arnold Bankete is an adult resident of Euless, Texas. From approximately November 2018 to December 2018 and from approximately March 2019 to May 2019, Plaintiff Bankete provided services as a transportation driver for the Defendant. During the relevant time, he was Defendant's employee as that term is defined in the FLSA. *See* 29 U.S.C. § 203(d).

3. The above-named Plaintiffs brings this action on their own behalf and on behalf of all similarly situated individuals who drive (or drove) vehicles to provide paratransit and other non-fixed route transportation services on behalf of Defendant.[1]

4. Defendant Irving Holdings, Inc. is a for-profit corporate entity, organized in Texas, with its headquarters (principal place of business) in Dallas County, Texas. Defendant conducts business throughout the state of Texas, providing transportation services within the Greater Dallas-Forth Worth Area.

---

[1] On information and belief, Defendant's business can be divided into two main categories: (1) taxicab services and; (2) transportation service for those with disabilities, the elderly, and other special needs. The term "transportation driver" and class of drivers within the scope of this collective action expressly excludes drivers *solely* performing work for Defendant as taxicab drivers. All drivers providing any other transportation services for Defendant, in whole or in part, are included within this collective action.

## JURISDICTION AND VENUE

5. The Court has original (federal question) jurisdiction over the FLSA claims asserted in this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331.

6. Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a), (b), and (c), because Defendant Irving Holdings, Inc. maintains its corporate headquarters in Dallas County, Texas and Defendant resides in Texas and is subject to personal jurisdiction in this District and Division.

7. Moreover, jurisdiction and venue are also proper where Defendant engages in daily business activities in Texas and in this District and Division.

## FLSA COVERAGE

8. At all times mentioned, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Plaintiff and the putative collective members.

9. At all times mentioned, Defendant has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10. At all times mentioned, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

11. At all times hereinafter mentioned, Defendant has been an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or employees handling goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level, which are separately stated).

12. At all times hereinafter mentioned, Plaintiffs and the putative collective members

were individual employees who were engaged in commerce as required by 29 U.S.C. §§ 206-207.

13. Specifically, Plaintiffs and the putative collective members are (or were) non-exempt employees who worked as transportation drivers for Defendant. Further, Plaintiffs and the putative collective members have handled materials and goods (e.g., Defendant's vehicles) that have been moved or produced in interstate commerce, which Defendant purchased or used in its business operation.

## FACTS

14. Defendant Irving Holdings, Inc. is a transportation company that provides both taxicab, paratransit, and other non-fixed route transportation services in the Greater Dallas-Fort Worth Area. Defendant's transportation drivers[2] perform services integral to Defendant's business, pursuant to transportation services contracts that the Defendant enters into with other entities (e.g., Defendant contracts with the Dallas Area Rapid Transit ("DART") – a transit agency serving the Greater Dallas-Fort Worth Area).

15. In order to provide the services offered to Defendant's customers, clients, and pursuant to its business agreements, Defendant relies upon transportation drivers (i.e., Plaintiffs and the putative collective members). Defendant misclassifies all of its drivers as independent contractors when in fact, Plaintiffs and the putative collective members are Defendant's employees.

16. Plaintiff Kalenga was initially hired to perform transportation services by the Defendant in approximately January 2017.[3] His duties are as follows: driving disabled passengers, the elderly, and other individuals with special transportation needs while using Defendant's

---

[2] As used herein, the term "transportation drivers" refers to all drivers performing services for Defendant other than drivers who have exclusively performed taxicab services for Defendant.

[3] Plaintiff Kalenga previously worked for Defendant as a taxicab driver. He was hired by Defendant to perform distinct work as a transportation services driver in January 2017.

4

vehicle, according to the assignments and schedules provided by Defendant, consistent with Defendant's policies, and in furtherance of Defendant's contractual obligations to entities such as DART.

17. Defendant regularly schedules Plaintiff Kalenga to work nearly seventy (70) hours per week, and he is often required to work in excess of seventy (70) hours to comply with Defendant's dictates. For example, his typical schedule is 5:00 A.M. to 5:00 P.M., Monday through Friday, and 5:00 A.M. to 2:00 P.M. on Saturdays. However, on numerous occasions Defendant has assigned him work that requires him to perform services beyond his normally assigned schedule.

18. Plaintiff Bankete was initially hired by the Defendant in approximately November 2018. His typical schedule required him to work from 4:00 A.M to 4:00 P.M., Monday through Saturday and he was also sometimes assigned additional work outside the scope of his normal schedule. Therefore, he worked approximately seventy-two (72) hours per week and sometimes more. His duties are as follows: driving disabled passengers, the elderly, and other individuals with special transportation needs while using Defendant's vehicle, according to the assignments and schedules provided by Defendant, consistent with Defendant's policies, and in furtherance of Defendant's contractual obligations to entities such as DART.

19. As a result of Defendant's decision to misclassify Plaintiffs and putative collective members as independent contractors, Defendant does not compensate Plaintiffs and the putative collective members an overtime premium of one-and-one-half their regular rate for hours worked in excess of forty (40) hours per week, despite Plaintiffs and putative collective members routinely working more than forty (40) hours per week.

20.     In order to work as a transportation driver for Defendant, Defendant requires Plaintiffs and putative collective members to pay a weekly "stand fee" – a fee deducted from transportation driver's compensation check each week for the use of Defendant's vehicle.  Defendant reserves unilateral control over the imposition of this "stand fee" and periodically changes the rate of the fee. In recent months, the stand fee has ranged from approximately $350 to $500 per week per transportation driver.

21.     In addition to Defendant's practice of charging its drivers significant weekly "stand fees," the Plaintiffs incur significant expenses for the use of Defendant's vehicles including all gasoline oil and some maintenance expenses. In addition, Defendant can and does impose fines on the drivers for late pickups etc.  As a result of these deductions, expenses, and fines, Plaintiffs and the putative collective members are compensated less than minimum wage during various workweeks throughout their employment by Defendant. . For example, in July 2019, Defendant paid Plaintiff Kalenga approximately $58.88 for three full days of work, or approximately thirty-six (36) hours.[4]

22.     Plaintiffs and the putative collective members drive vans owned or controlled by the Defendant and typically provide paratransit or similar services (e.g., driving disabled individuals and the elderly)

23.     Plaintiffs and the putative collective members have been uniformly misclassified as independent contractors by the Defendant.

---

[4]     Plaintiff Kalenga worked approximately half of his normal hours this week because he was sick for part of the week.

6

24. While Plaintiffs and the putative collective members perform transportation services at the direction and control of Defendant and while using the Defendant's equipment (e.g., Defendant's vehicles).

25. The Defendant's dispatchers contact Plaintiffs and putative collective members by email and phone to provide them a detailed manifest of their specific assignments (typically the day before each shift).

26. Defendants instruct Plaintiffs and the putative collective members to complete assigned pickup and drop offs and detail their work history on a manifest form provided by Defendant.

27. Additionally, Defendant requires Plaintiffs and the putative collective members to accept coupons as a form of payment and instructs transportation drivers to maintain and deliver the coupons to Defendant after completing their assignments.

28. On information and belief, the Defendant reserves the right to control the ultimate payments made to transportation drivers and Defendant determines the amount of payments due to transportation drivers each pay period.

29. Defendant controls the manner in which drivers are dispatched and trips are handled. For example, Defendant assigns drivers, such as the Plaintiffs, trips to complete at Defendant's direction – even if those trips are outside of the driver's standard work schedule. Defendant regularly assigns Plaintiff Kalenga a work schedule from 5am to 5pm, Monday through Friday, and 5am to 2pm on Saturdays. However, on numerous occasions, Defendant has unilaterally assigned Plaintiff Kalenga trips to be performed beginning at approximately 4:30am.

30. If Plaintiffs or the putative collective members decline or fail to perform work assigned by Defendant, they are often disciplined by the Defendant. For example, on information

and belief, Defendant has a common practice of "fining" drivers for failing to accept assigned work, for arriving late to assigned pickups, or for getting into accidents (even if the driver is not at fault).

31. Through the Defendant's hiring, scheduling, assignment, disciplinary, and pay practices, and in service of Defendant's business contracts, Defendant's cause transportation drivers to suffer or permit to work. In fact, Defendant can prevent drivers from working on a temporary or permanent basis.

32. The services provided by Plaintiffs and putative collective members are in the usual course of, and indeed are an essential part of, Defendant's business. In fact, on information and belief, Defendant has had to recruit and hire additional putative collective members in recent months to meet the demands of its business contracts and interests.

33. Based on all the hours that Defendant required Plaintiffs and the putative class members to spend providing transportation services to their customers and clients, there is little or no time left for Plaintiffs to make trips for any other company besides Defendant. As a result, Plaintiffs and the putative class members are economically dependent on Defendant.

34. Defendant's misclassification of Plaintiffs and the putative collective members as independent contractors and the additional violations of the FLSA described above were willful and undertaken in bad faith.

35. Plaintiff Kalenga has actively discussed his intention to challenge Defendant's labor practices, by taking legal action, with other drivers working for Defendant.

36. On information and belief, Defendant has become aware that Plaintiff Kalenga is meeting with attorneys to discuss taking legal action against Defendant in response to the labor practices described above.

37. On information and belief, Defendant has taken retaliatory actions against Plaintiff Kalenga, in response to his activism and efforts to challenge Defendant's labor practices, by canceling work trips assigned to Plaintiff Kalenga.

38. On information and belief, Defendant's actions are designed to "chill" Plaintiff Kalenga's activism and to cause him to fear for his job.

## COLLECTIVE ACTION ALLEGATIONS

39. Plaintiffs asserts claims under the FLSA on behalf of themselves and all similarly situated drivers in Texas.

40. Plaintiffs' FLSA claims should proceed as a collective action because Plaintiffs and the putative collective members worked pursuant to the common misclassification scheme described above under which Defendant did not pay overtime premium when working more than forty (40) hours per week, failed to pay not less than minimum wage of $7.25 for every hour worked, and therefore, they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## CAUSES OF ACTION
### COUNT I: FAILURE TO PAY MINIMUM WAGES
### (INDIVIDUAL AND COLLECTIVE ACTION)

41. Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

42. Defendant's willful conduct in failing to ensure that Plaintiffs and the putative collective members with whom it has relied upon to perform a critical and integral component of its business services, and therefore are its employees, were paid at a rate not less than the federal minimum wage, after accounting for deductions charged by Defendant, violates the FLSA, 29 U.S.C. § 206. This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

9

43. Plaintiffs and the members of the putative collective are also entitled to liquidated damages equal to the amount of unpaid minimum wages due to them under the FLSA, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

### COUNT II: FAILURE TO PAY OVERTIME WAGES
### (INDIVIDUAL AND COLLECTIVE ACTION)

44. Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

45. Plaintiffs and the members of the proposed FLSA collective routinely worked in excess of forty (40) hours per workweek for Defendant.

46. Defendant failed to pay Plaintiffs and the members of the putative FLSA collective at the rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty hours weekly as required by section 7(a) of the FLSA, 29 U.S.C. § 207(a).

47. Plaintiffs and the members of the putative collective are entitled to back wages at the rate of one-and-a-half times their regular rate of pay for all overtime hours worked in excess of forty hours per week, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b). The failure of Defendant to compensate Plaintiffs and the members of the putative collective for overtime work as required by the FLSA was knowing, willful, intentional, and done in bad faith.

48. Plaintiffs and the members of the putative collective are also entitled to liquidated damages equal to the amount of unpaid overtime compensation due to them under the FLSA, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

49. Plaintiffs and those similarly situated are also entitled to an award of reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 29 U.S.C. § 216(b).

## COUNT III: RETALATION
### (INVIDIVUAL ACTION – PLAINTIFF KALENGA)

50. Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

51. Defendant has unlawfully retaliated against Plaintiff Kalenga in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), which makes it illegal for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ."

52. Section 215(a)(3) has been interpreted broadly to protect individuals such as Plaintiff Kalenga from retaliatory action for taking steps to vindicate their rights under the FLSA. *See* 29 U.S.C. § 215(a)(3)

## **DAMAGES**

53. Plaintiffs and collective members are entitled to recover compensation for the hours worked in which Plaintiffs and collective members were not paid at the federally mandated minimum wage rate.

54. Plaintiffs and collective members are entitled to recover compensation for the hours worked over forty (40) in a workweek, but for which Plaintiffs and collective members were not paid at one-and-one-half times their regular rate.

55. Plaintiffs and collective members are also entitled to an amount equal to all of the unpaid wages and fees as liquidated damages as Defendant's actions were not based upon good faith. *See* 29 U.S.C. § 216(b).

56. Plaintiffs and collective members are entitled to recover attorneys' fees and costs as required by the FLSA. *See* 29 U.S.C. § 216(b).

57. Plaintiff Kalenga is entitled to an order requiring Defendant to make him whole for any reduction in work or other retaliatory conduct that has occurred or that may occur during the pendency of this action.

## PRAYER FOR RELIEF

Plaintiffs (and those who join this action) pray that the Court enter a judgment against Defendant granting the following relief:

a. An Order granting certification of this case as an FLSA collective action and permitting notice to be sent to the putative collective members;

b. An award of damages for all unpaid wages, expenditures, costs, deductions, benefits, or other losses resulting from Defendant's misclassification, as described above;

c. An award of damages and non-monetary damages for Defendant's retaliatory actions against Plaintiff Kalenga, as described above;

d. Statutory liquidated damages, pursuant to the FLSA;

e. Attorneys' fees and costs; and

f. Such other legal and equitable relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ Drew N. Herrmann*
Drew N. Herrmann
Texas Bar No. 24086523
drew@herrmannlaw.com
Pamela G. Herrmann
Texas Bar No. 24104030
pamela@herrmannlaw.com
**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, Texas 76102
Phone: (817) 479-9229
Fax: (817) 887-1878

-AND-

Harold L. Lichten
(admitted *pro hac vice*)
hlichten@llrlaw.com
Zachary L. Rubin
(admitted *pro hac vice*)
zrubin@llrlaw.com
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston St., Suite 2000
Boston, MA  02116
Phone: (617) 994-5800

ATTORNEYS FOR PLAINTIFFS
AND PUTATIVE COLLECTIVE MEMBERS

CERTIFICATE OF SERVICE

I certify that on September 24, 2019 the above document will be served on Defendant's attorney of record via CM/ECF.

*/s/ Drew N. Herrmann*
Drew N. Herrmann