## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DIDYME KALENGA and** | § | |
| **ARNOLD BANKETE,** | § | |
| **on behalf of themselves and all** | § | |
| **other similarly situated,** | § | |
| **Plaintiffs,** | § | **Civil Action No. 3:19-cv-01969-S** |
| | § | |
| **v.** | § | |
| | § | |
| **IRVING HOLDINGS, INC.** | § | |
| **Defendant.** | § | |

---

## DEFENDANT IRVING HOLDINGS, INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR EXPEDITED CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND JUDICIALLY-SUPERVISED NOTICE

---

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................2

    A.      Procedural History ................................................................................2

    B.      Facts ................................................................................2

III.    ARGUMENT AND AUTHORITY ................................................................4

    A.      Plaintiffs fall short of the *Lusardi* conditional certification test. ........................4

        1.      There is not a reasonable expectation that an aggrieved and similarly situated class exists. ................................................................6

        2.      Plaintiffs fail to present evidence that potential plaintiffs want to opt-in. ................................................................8

    B.      The "Taxicab Exemption" applies. ................................................................10

IV.     DEFENDANT'S OBJECTIONS TO PLAINTIFFS' PROPOSED NOTICE ................13

    A.      Notice should not be sent to drivers bound by arbitration agreements. ...............13

    B.      Defendant's objections to Plaintiffs' proposed class definition. ........................16

    C.      Defendant's objections to the form and content of Plaintiffs' proposed notice. ................................................................17

    D.      Defendant's objections to Plaintiffs' proposed method of effectuating notice. ................................................................18

    E.      Defendant's objections to Plaintiffs' requested discovery ................................20

    F.      Defendant requests the appointment of an independent third party to collect, account for, and tabulate notice responses. ............................................21

V.      CONCLUSION ................................................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Acevedo v. Allsup's Convenience Stores, Inc.,*
    600 F.3d 516 (5th Cir. 2010) ................................................................5

*Aguirre v. SBC Commc'ns, Inc.,*
    No. H-05-3198, 2006 WL 964554 (S.D. Tex. 2006 Mar. 12, 2007) ....................................5, 7

*Altiep v. Food Safety Net Services, Ltd.,*
    No. 3:14-CV-00642-K, 2014 WL 4081213 (N.D. Tex. Aug. 18, 2014) ...............................20

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011)...............................................................................13

*Banc One Acceptance Corp. v. Hill,*
    367 F.3d 426 (5th Cir. 2004) ................................................................14

*Barron v. Henry Cnty. Sch. Sys.,*
    242 F. Supp. 2d 1096 (M.D. Ala. 2003) ................................................7

*Bass v. City of Dallas,*
    No. 3:17-CV-3330-S, 2019 WL 1864958 (N.D. Tex. Apr. 24, 2019).....................8

*Cantu v. Circle Bar A, Inc.,*
    No. 5:15-CV-00468, 2016 WL 11578514 (W.D. Tex. Jan. 25, 2016) .....................9

*In re Capco Energy, Inc.,*
    669 F.3d 274 (5th Cir. 2012) ................................................................14

*Cariani v. D.L.C. Limousine Serv., Inc.,*
    363 F.Supp.2d 637 (S.D.N.Y. 2005)...............................................11, 12

*Coffel v. Stryker Corp.,*
    284 F.3d 625 (5th Cir. 2002) ................................................................14

*Desert Palace, Inc. v. Costa,*
    539 U.S. 90 (2003)..................................................................................5

*Detho v. Bilal,*
    No. H-07-2160, 2008 WL 2962821 (S.D. Tex. July 29, 2008*)* ...............................9

*Dybach v. Florida Dep't of Corrections,*
    942 F.2d 1562 (11th Cir. 1991) ................................................................6

*Edwards v. Doordash, Inc.*,
    888 F.3d 738 (5th Cir. 2018) .......................................................................13, 14

*Encino Motorcars, LLC v. Navarro*,
    138 S.Ct. 1134 (2018)..........................................................................................10

*Epic Systems Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)...................................................................................13, 15

*Garcia v. TWC Admin. LLC*,
    No. 14-CV-985, 2015 WL 1737932 (W.D. Tex. 2015)...................................19, 20

*Ghandi v. Dell Inc*,
    No. 1:08-CV-248-JRN, 2009 WL 3427218, at *1 (W.D. Tex. Oct. 20, 2009) ......................21

*Guzelgurgenli v. Prime Time Specials, Inc.*,
    883 F. Supp. 2d 340 (E.D.N.Y. 2012) ..................................................................19

*Hamadou v. Hess Corp.*,
    915 F. Supp. 2d 651 (S.D.N.Y. 2013)...................................................................18

*Harris v. FFE Transp. Svcs., Inc.*,
    No. 3:05-CV-0077-P, 2006 WL 1994586 (N.D. Tex. May 15, 2006)......................7

*Huckaba v. Ref-Chem, L.P.*,
    892 F.3d 686 (5th Cir. 2018) ...............................................................................14

*Hoffman La-Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989)........................................................................................14, 17

*Humphries v. Stream Int'l, Inc.*
    No. 3:03–CV–1682–D, at *7 (N.D. Tex. Feb. 13, 2004) (Boyle, J.) (slip op.) ......................20

*Jihui Zhang v. XYZ Limousine, Inc.*,
    No. 2:15-CV-07440, 2019 WL 1220310 (E.D.N.Y. Mar. 15, 2019)......................11

*In re JPMorgan Chase & Co.*
    916 F.3d 494 (5th Cir. 2019) .........................................................................13, 14

*Kibodeaux v. Wood Grp. Prod.*,
    No. 4:16–CV–3277, 2017 WL 1956738 (S.D. Tex. May 11, 2017) ........................8

*Klein v. Nabors Drilling USA L.P.*,
    710 F.3d 234 (5th Cir. 2013) ...............................................................................14

*Kubala v. Supreme Prod. Servs., Inc.*,
    830 F.3d 199 (5th Cir. 2016) ...............................................................................14

*Lee v. Metrocare Services*,
   980 F. Supp. 2d 754, 760 (N.D. Tex. 2013) ....................................................6

*Lentz v. Spanky's Rest. II, Inc.*,
   491 F. Supp. 2d 663 (N.D. Tex. 2007) ......................................................6, 8

*Lusardi v. Xerox Corp.*,
   118 F.R.D. 351 (D.N.J. 1987) ..................................................................5

*Marshall v. Eyemasters of Tex., Ltd.*,
   272 F.R.D. 447 (N.D. Tex. 2011) ..............................................................5

*McCloud v. McClinton Energy Group, L.L.C.*,
   No. 7:14-CV-120, 2015 WL 737024 (W.D. Tex. Feb. 20, 2015)...........................19

*McKnight v. D. Hous., Inc.*,
   756 F. Supp. 2d 794 (S.D. Tex. 2010) .........................................................7

*Mooney v. Aramco Servs. Co.*,
   54 F.3d 1207 (5th Cir. 1995) ...................................................................5

*Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*,
   904 F.3d 208 (2d Cir. 2018)........................................................10, 11, 12

*Page v. Nova Healthcare Mgmt.*, L.L.P.,
   No. H–12–2093, 2013 WL 4782749, at *6 (S.D. Tex. Sept. 6, 2013) .....................9

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
   139 F.3d 1061 (5th Cir. 1998) ..................................................................16

*Prater v. Commerce Equities Mgmt. Co.*,
   No. H-07-2349, 2007 WL 4146714 (S.D. Tex. Nov. 19, 2007)...............................8

*Reyes v. Quality Logging, Inc.*,
   52 F. Supp. 3d 849 (S.D. Tex. Oct. 10, 2014) ................................................18

*Reyna v. Int'l Bank of Commerce*,
   839 F.3d 373 (5th Cir. 2016) ...................................................................13

*Rosales v. Equinox Holdings, Inc.*,
   3:18-CV-0356-B, 2019 WL 1753962 (N.D. Tex. Apr. 19, 2019) ............................6

*Roussell v. Brinker Int'l, Inc.*,
   441 F. App'x 222 (5th Cir. 2011) (unpublished) ............................................4

*Sandoz v. Cingular Wireless LLC*,
   553 F.3d 913 (5th Cir. 2008) ...................................................................4

*Simmons v. T-Mobile USA, Inc.*,
  No. H-06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007)....................................................9

*Solis v. Hotels.com Texas Inc.*,
  No. 3-03-CV-618-L, 2003 WL 22272008 (N.D. Tex. Oct. 1, 2003).......................................17

*Stiles v. FFE Transp. Servs., Inc.*,
  2010 WL 935469, at *3 (N.D.Tex. Mar. 15, 2010) ................................................................6

*Tolentino v. C & J Spec–Rent Servs., Inc.*,
  716 F. Supp. 2d 642 (S.D. Tex. 2010) ...................................................................................5

*Valcho v. Dallas County Hosp. Dist.*,
  574 F. Supp. 2d 618 (N.D. Tex. 2008) .................................................................................19

*Walker v. Honghua Am., LLC*,
  870 F. Supp. 2d 462 (S.D. Tex. 2012) ..............................................................................5, 8

*In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III)*,
  No. H-11-2266, 2013 WL 2180014 (S.D. Tex. 2013)..............................................17, 18, 19

*Yaklin v. W-H Energy Servs., Inc.*,
  No. C-07-422, 2008 WL 1989795 (S.D. Tex. May 2, 2008).................................................17

**Statutes**

29 U.S.C. § 206 ...........................................................................................................................10

29 U.S.C. § 207..........................................................................................................................10

29 U.S.C. § 213(b)(17) ..................................................................................................... *passim*

29 U.S.C. § 216(b) ........................................................................................................................4

Fair Labor Standards Act (FLSA)
  29 U.S.C. § 201, *et seq.* ...................................................................................................... *passim*

Defendant Irving Holdings, Inc. ("Irving Holdings") responds in opposition to Plaintiffs' motion for conditional certification of collective action and judicially supervised notice under section 216(b).

## I. INTRODUCTION

This case involves a purported collective action in which Plaintiffs seek relief under the Fair Labor Standards Act (FLSA). Plaintiffs are former taxicab drivers who provided traditional and paratransit taxicab services to passengers around the Metroplex. Defendant Irving Holdings is a taxicab company that operates "Yellow Cab" in the Dallas-Fort Worth market.

While taxicab drivers are quintessential examples of independent contractors – and not covered by the FLSA – Plaintiffs allege that for purposes of this lawsuit, they are "employees" of Irving Holdings and are entitled to both overtime and the minimum wage. Plaintiffs attempt to draw a meaningful distinction between a traditional taxicab driver and a taxicab paratransit driver, but have not done so.

Furthermore, Plaintiffs' claims are expressly barred by the FLSA, which exempts from its coverage "any driver employed by an employer engaged in the business of operating taxicabs." *See* 29 U.S.C. § 213(b)(17); *see* Amended Complaint ¶ 2 FN 1. There is no dispute that Irving Holdings is "in the business of operating taxicabs." As such, the claims of named plaintiffs – and all putative plaintiffs – are not cognizable under the FLSA.

Despite these legally-fatal flaws, Plaintiffs request that this Court grant conditional certification and issue judicially-supervised notice to a proposed class of taxicab paratransit drivers. However, for the reasons stated herein, conditional certification is not appropriate or warranted in this case, and the motion should be denied.

## II.   BACKGROUND

### A.   Procedural History

On August 16, 2019, Plaintiffs, purporting to sue on behalf of themselves and all others similarly situated, filed a collective action complaint asserting claims under the FLSA against Irving Holdings. The complaint named two taxicab drivers as plaintiffs: (1) Didyme Kalenga and (2) Arnold Bankete ("Named Plaintiffs"). Mr. Kalenga is a former traditional taxicab driver and a former paratransit taxicab driver. Mr. Bankete is also a former taxicab driver who participated in the paratransit program on two separate occasions. On September 24, 2019, before Irving Holdings answered the Original Complaint, Plaintiffs amended their complaint. Thereafter, on October 10, 2019, Irving Holdings timely filed its answer. On November 27, 2019, Plaintiffs filed their motion for conditional certification, asking this Court to conditionally certify a class of current and former Irving Holdings' paratransit drivers and issue judicially supervised notice ("Plaintiffs' Motion").

### B.   Facts

Defendant Irving Holdings is a transportation company that operates taxicab companies, including "Yellow Cab," in the Dallas-Fort Worth area. *See* Declaration of Elizabeth George, **App. 01**, ¶ 2. Irving Holdings' operations can be broken down into two categories: (1) traditional taxicab business; and (2) special taxicab programs. *Id.* Many drivers, including one of the Named Plaintiffs, provide or have provided contracting services in both operations. *Id.* The first of these operations, the traditional taxicab business, consists of widely understood taxicab work, wherein a rider hails a cab, either over the phone or from the street. *Id.* Riders select the termini, pay for a single trip, and the driver selects the appropriate route. *Id.*

This litigation places the focus on the second operation, the special taxicab programs. More specifically, Plaintiffs claim that paratransit taxicab drivers are improperly classified as both taxicab drivers and independent contractors. For the program in which the Named Plaintiffs

provided taxicab paratransit services, Irving Holdings contracts to provide transportation services to DART passengers who are disabled and otherwise unable to use traditional public transit. **App. 01-02**, ¶ 3. In many respects, both aspects of Irving Holdings' business operate in the exact same manner. Both traditional and paratransit drivers select their own routes, control the manner and means in which they operate the vehicle, and provide single trips to either individual or groups of riders. *Id*. Despite Plaintiffs' allegations to the contrary, each driver's pay is not determined "at the sole discretion of Irving Holdings." *See* Plaintiffs' Motion, Kalenga Dec. ¶ 10; Bankete Dec. ¶ 10. Rather, each driver is paid a flat rate for all rides five (5) miles or less and then a progressive rate for each mile thereafter. **App. 04**, ¶ 12. Each driver's compensation is directly correlated to his or her willingness and ability to provide both a high number of rides and rides in excess five (5) miles.  Both Named Plaintiffs acknowledge this fact by referring to shorter distance routes as "less preferable routes." *See* Plaintiffs' Motion, Kalenga Dec. ¶ 22; Bankete Dec. ¶ 22.

Unlike a traditional taxicab, eligible paratransit riders "hail" a disability-accessible cab a day in advance via smartphone phone app, online scheduling, or over-the-phone scheduling. **App. 02**, ¶ 4. While Plaintiffs claim that the paratransit service is intended to be an accessible alternative to fixed-route city transit, it is more accurately characterized as a taxicab service.[1] Unlike ordinary city transit, paratransit riders are able to determine their pick-up and drop-off location as well as their ride time, drivers' routes are not restricted or fixed, and drivers' hours vary based on daily demand. *Id.* From the time of pick up to the time of drop off, paratransit rides operate, for all intents and purposes, as a typical cab ride. Furthermore, all taxicab drivers, both traditional and paratransit, are required to apply for and maintain a transportation-for-hire driver's license, commonly referred to as a taxicab permit. **App. 03**, ¶ 6.

---

[1] See Plaintiffs' Motion ¶ 8.

All drivers, both traditional and paratransit, execute an independent contractor agreement prior to driving for Irving Holdings. **App. 02**, ¶ 5. Under this agreement, a driver acknowledges that he or she is an independent contractor and solely responsible for payment of any and all taxes and assessments that may be imposed on the driver's earnings in the operation of a cab. *Id.*

While every Irving Holdings contract driver is eligible to operate a traditional taxicab, a portion of these drivers elect to drive a paratransit taxicab. **App. 02**, ¶ 6. Prior to driving for any paratransit program, all eligible drivers must submit an application and denote the days and hours they are available to drive. *Id.* Each driver makes an independent business decision regarding the program he or she is applying for along with the days and hours in which he or she is available to accept paratransit taxicab rides. **App. 02-03**, ¶¶ 4-7. Further, prior to driving under the DART paratransit contract, all eligible drivers – including the Named Plaintiffs – must execute a Special Projects Transportation Agreement ("SPTA"). **App. 02-03**, ¶ 6. This agreement provides, "[s]ubcontractor is an independent contractor that will provide transportation to various DART recipients, from time to time as designated and assigned by Broker and in Broker's sole discretion, in the DART service area." **App. 32, 35**.

### III.      ARGUMENT AND AUTHORITY

**A.      Plaintiffs fall short of the *Lusardi* conditional certification test.**

An alleged employee may bring an action for violating the minimum wage and overtime provisions of the FLSA either individually or as a collective action on behalf of himself and "other employees similarly situated." *See* 29 U.S.C. § 216(b). Unlike a standard class action, a collective action under Section 216(b) provides procedure to "opt-in" rather than "opt-out." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 225 (5th Cir. 2011) (unpublished) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)). Although the Fifth Circuit has declined to adopt a specific test to determine when a court should conditionally certify a class or grant notice in a

case brought under the FLSA, a majority of courts within the Fifth Circuit have adopted the *Lusardi* two-stage approach. *Lusardi v. Xerox Corp*., 118 F.R.D. 351 (D.N.J. 1987).[2] Under the *Lusardi* two-stage approach, the court proceeds first under the "notice stage" and then under the "decertification stage." *See Mooney v. Aramco Servs. Co*., 54 F.3d 1207, 1216 (5th Cir. 1995), overruled on other grounds, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

In the notice phase, the court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc*., 600 F.3d 516, 519 (5th Cir. 2010).

Plaintiffs ask this Court to conditionally certify a class consisting of "[a]ll individuals who work or worked for Irving Holdings, Inc. as paratransit drivers in the State of Texas and classified as independent contractors during the three (3) period beginning on September 25, 2016 to present." *See* Plaintiffs' Motion pp. 3, 11, 24. The court must thus determine at this stage whether, in the words of several courts, "some identifiable facts or legal nexus ... binds the claims so that hearing the cases together promotes judicial efficiency." *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) (quoting *Aguirre v. SBC Commc'ns, Inc*., No. H-05-3198, 2006 WL 964554, at *5 (S.D. Tex. 2006)).

Under *Lusardi*, Plaintiffs must show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exists; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt into the lawsuit. *Lusardi*, 118 F.R.D. at 351; *Tolentino v. C & J Spec–Rent Servs., Inc*., 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010).

---

[2] See *Marshall v. Eyemasters of Tex., Ltd*., 272 F.R.D. 447, 449 (N.D. Tex. 2011) (applying *Lusardi*).

**1.    There is not a reasonable expectation that an aggrieved and similarly situated class exists.**

The Court must satisfy itself that other "similarly situated" individuals justify notice because they desire to opt-in and are "similarly situated" with respect to job requirements and pay provisions. *Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007) (citing *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). As to the first factor, a court considers whether a cognizable FLSA claim has been stated, and whether there are other existing or former employees who performed the same tasks and whom the alleged employer allegedly treated in the same manner. *Rosales v. Equinox Holdings, Inc.*, 3:18-CV-0356-B, 2019 WL 1753962, at *4 (N.D. Tex. Apr. 19, 2019)

Here, Plaintiffs present nothing more than the fact that all drivers were treated as independent contractors and that their pay was allegedly determined by Irving Holdings at its "sole discretion." On a preliminary note, Plaintiffs support their motion for conditional certification with two nearly identical copycat declarations that are replete with vague, unsupported, and conclusory statements. The identical nature of these declarations bears on the credibility of the declarants and the weight of the evidence. *Lee v. Metrocare Services*, 980 F. Supp. 2d 754, 760 (N.D. Tex. 2013). Courts in this district have denied conditional certification, in part, because the plaintiff failed to allege a factual basis for their conclusory assertions. *Stiles v. FFE Transp. Servs., Inc.*, 2010 WL 935469, at *3 (N.D.Tex. Mar. 15, 2010).

Contrary to Plaintiffs' unsupported allegations, Irving Holdings pays paratransit drivers based on the length of the ride — a flat rate for rides five (5) miles or less and an additional reimbursement for each mile thereafter. **App. 02**, ¶ 12 Further, aside from the allegation that all drivers are treated as contractors, Plaintiffs make no allegation that they were victims of the same discriminatory pay policy. Furthermore, within the proposed class, the potential class members

vary as to: (1) time spent as an exclusive paratransit driver; (2) time spent as an exclusive traditional taxicab driver; (3) geographic area; (4) program and contract in which they drove; (5) job duties; (6) vehicles driven; and (7) payment.

The fundamental inquiry is whether Plaintiffs show "some identifiable facts or legal nexus [that] binds the claims so that hearing the cases together promotes judicial efficiency." *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010) (quoting *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)). Further, courts within this circuit have declined to conditionally certify a class at the notice stage where the FLSA claims would require highly individualized inquiry into whether workers were properly classified as exempt from the overtime requirements or as an independent contractor. *Harris v. FFE Transp. Svcs., Inc.*, No. 3:05-CV-0077-P, 2006 WL 1994586, at *4-5 (N.D. Tex. May 15, 2006). And a number of courts have refused to certify a class, even conditionally, when determining whether the employer improperly treated the plaintiffs as non-exempt would require a highly individualized, fact-intensive inquiry. *Aguirre v. SBC Communications, Inc.*, No. H-05-3198, 2006 WL 964554, at *7 (S.D. Tex. Apr. 11, 2006).

Here, conditional certification does not achieve the goal of judicial efficiency. If conditional certification is granted, this Court will be required to perform an individualized inquiry into: (1) each driver's ratio of time spent as a traditional taxicab driver (which is undoubtedly exempt from FLSA complaints under 29 U.S.C. § 213(b)(17)); (2) each driver's ratio of time spent as a paratransit driver (arguably still exempt from FLSA complaints under 29 U.S.C. § 213(b)(17)); (3) whether the opt-in plaintiff's participation in a non-exempt program ever, in any given week, reached the 40 hour a week threshold required by the FLSA; (4) and a multitude of other individualized inquiries that follow complex FLSA claims.

Therefore, Plaintiffs fail to establish the first two elements of the *Lusardi* inquiry.

**2.      Plaintiffs fail to present evidence that potential plaintiffs want to opt-in.**

While the Plaintiffs state that this third inquiry is not required by either statute or case law, courts within the Fifth Circuit, including this one, have considered whether potential plaintiffs want to opt-in when determining conditional certification.[3]

Plaintiffs may satisfy the third factor by providing evidence that individuals, other than those who filed the initial complaint, have taken an interest in the lawsuit. *Kibodeaux v. Wood Grp. Prod.*, No. 4:16–CV–3277, 2017 WL 1956738, at *3 (S.D. Tex. May 11, 2017) (citing *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 472 (S.D. Tex. 2012); *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *8 (S.D. Tex. Nov. 19, 2007). This can be accomplished through affidavits from potential class members affirming their intentions to join or by showing that new plaintiffs opted into the lawsuit after it was filed. *Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007) (finding it problematic that the plaintiff could only identify one other potential plaintiff).

Here, the Plaintiffs present only the identical sworn declaration testimony of the two Named Plaintiffs.[4] *See* Plaintiffs' Motion, Kalenga Dec; Bankete Dec. In support of this third factor, each Named Plaintiff states, verbatim:

> "In getting to know other transportation drivers at Irving Holdings, I believe there are many current and former employees who work (or worked) for Irving Holdings as transportation drivers and were classified as independent contractors exempt from overtime, who would join a collective action to recover their unpaid compensation from Irving Holdings if they were informed of their rights to do so, especially if they were informed of their right to do so without the fear of retaliation for asserting their rights to recover their unpaid overtime."

---

[3] *See* Plaintiffs' Motion ¶ 17; *Bass v. City of Dallas*, No. 3:17-CV-3330-S, 2019 WL 1864958, at *3 (N.D. Tex. Apr. 24, 2019).

[4] *See supra* page 6.

*See* Plaintiffs' Motion, Kalenga Dec. ¶ 30; Bankete Dec. ¶ 29. As a preliminary note, Plaintiffs' assertions are purely speculative in nature. The subjective belief of the declarant that unidentified potential plaintiffs *might* opt-in to this litigation should be given little to no persuasive value. Further, while the evidentiary rules at the conditional certification stage are admittedly lax, the contents of an affidavit or declaration must still, at the very least, be based on personal knowledge. *Page v. Nova Healthcare Mgmt.*, L.L.P., No. H–12–2093, 2013 WL 4782749, at *6 (S.D. Tex. Sept. 6, 2013) (discussing declarants' personal knowledge). Here, the Named Plaintiffs do not have personal knowledge of whether potential plaintiffs would want to opt into this litigation and offer little explanation as to how they have formed a belief that other drivers *might* opt-in to this litigation. On this evidentiary basis alone, Plaintiffs fail to establish that similarly situated individuals want to opt-in to this litigation.

Notwithstanding the evidentiary issues, various courts have found that reliance upon only a plaintiff's allegations alone that putative class members exist, is insufficient to meet the third factor for conditional certification. *See Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007); *see also Detho v. Bilal*, No. H-05-3198, 2008 WL 2962821, at *3 (S.D. Tex. July 29, 2008*); see also Cantu v. Circle Bar A, Inc.*, No 5:15-CV-00468, 2016 WL 11578514 (W.D. Tex. Jan. 25, 2016). Here, Plaintiffs provide only unsupported declaration testimony that other contract drivers *might* want to opt-in if given the opportunity. Reliance upon the Plaintiffs' allegations alone is not enough to warrant conditional certification or establish that other potential plaintiffs want to opt into this litigation.

Furthermore, as discussed in detail below, many of the drivers within the proposed class definition are parties to valid arbitration agreements that contain collective action waivers. These drivers have already made clear, by signing arbitration agreements, they do not wish to "opt-in" or participate in this collective action. Similarly, because these drivers have voluntarily signed

arbitration agreements, they are no longer properly considered "potential plaintiffs," who are eligible to join this litigation or receive notice of this collective action.

Based on the lack of evidence, Plaintiffs fail to meet the minimum showing required to establish that similarly situated individuals would opt in to this litigation.

**B.     The "Taxicab Exemption" applies.**

The motion for conditional certification should also be denied because Plaintiffs' claims are subject to the taxicab exemption. *See* 29 U.S.C. § 213(b)(17). Even at the preliminary conditional certification stage, this Court should consider the application of this express bar to Plaintiffs' claims. In the past, FLSA exemptions have been narrowly construed, but the Supreme Court recently directed otherwise. *See Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018). In *Encino Motorcars*, the Supreme Court made clear that courts must give FLSA exemptions "a fair (rather than narrow) interpretation" and that "the FLSA gives no textual indication that its exemptions should be construed narrowly." *Id*.

Based on the nature of the transportation services provided by the Named Plaintiffs, this case necessarily implicates the "taxicab exemption," which exempts from the FLSA "any driver employed by an employer engaged in the business of operating taxicabs." *See* 29 U.S.C. §§ 206, 207, 213(b)(17). The Fifth Circuit has not previously addressed or interpreted the applicability of this particular exemption. The most recent and in-depth analysis of the "taxicab exemption" comes from the Second Circuit. *See Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc*., 904 F.3d 208 (2d Cir. 2018).

In *Munoz-Gonzalez*, the Second Circuit held that under the FLSA, the plain mean of a taxicab is: (1) a chauffeured passenger vehicle; (2) available for hire by individual members of the general public; (3) that has no fixed schedule, fixed route, or fixed termini. *Id*. at 214. The Second Circuit, applying this definition, found a "chauffeured car service" was a taxicab business and

therefore exempt from FLSA claims. *Id.* Under a fair application, Irving Holdings along with its paratransit program falls squarely within the exemption.

First, Irving Holdings' fleet of both traditional and paratransit vehicles qualify as "chauffeured passenger vehicles." Specifically, paratransit contractors drive disability accessible minivans, many of which are identical to the traditional "Yellow Cab." **App. 01**, ¶ 2 The mere fact that disabled persons are able to easily access the vehicle should be irrelevant to the inquiry of whether these vans are "chauffeured passenger vehicles."

Second, Irving Holdings' drivers are available for hire by the general public. **App. 03**, ¶ 9. Even while subcontracting with DART, paratransit drivers are available for hire by individual members of the general public. *Id.* Indeed, all paratransit drivers are permitted to perform traditional and non-paratransit trips in a paratransit vehicle. **App. 04**, ¶ 11 In *Munoz-Gonzalez*, the Second Circuit noted that contracts with local businesses have long been common in the taxicab industry and that "what matters is that DLC's cars were available for hire by individual members of the general public." *Munoz-Gonzalez*, 904 F.3d at 217. Further, so long as a ground transportation company is available for hire by the general public, contracts for recurrent transportation do not render the taxicab exemption inapplicable. *Jihui Zhang v. XYZ Limousine, Inc.*, No. 2:15-CV-07440, 2019 WL 1220310, at *7 (E.D.N.Y. Mar. 15, 2019) (applying *Munoz-Gonzalez*). Here, Irving Holdings' paratransit vehicles are available for hire by individual members the general public, albeit individual members who qualify for paratransit or disability assistance. Further, subcontracting in the DART paratransit program does not render a driver unavailable to the general public.

Third, Irving Holdings' paratransit drivers take passengers wherever they want to go and "do not cover fixed route or adhere to fixed schedules" or termini. **App. 03-04**, ¶ 9; *Munoz-Gonzalez*, 904 F.3d at 211 (quoting *Cariani v. D.L.C. Limousine Serv., Inc.,* 363 F.Supp.2d 637,

645, 649 (S.D.N.Y. 2005)). Unlike a fixed route driver (e.g. city bus, train, or shuttle), Irving Holdings' paratransit drivers take passengers where they would like to go, driving schedules vary day-by-day, drivers are not restricted to a specific route, and passengers are not limited to fixed termini.[5] *Id*.

Lastly, while not an element of the taxicab inquiry, the Second Circuit in *Munoz-Gonzalez* rejected the Plaintiffs' argument that they were not "taxicab drivers" because a central dispatcher controlled driver assignments. *Munoz-Gonzalez*, 904 F.3d at 219. Further, the Court dismissed the argument that drivers could not be "hailed" by the general public as irrelevant to the inquiry. *Id*. Here, paratransit taxicab drivers are dispatched to pick up passengers using in-car software. Further, Plaintiffs point to the fact that ride locations are provided on a tablet in order to show that Irving Holdings directs their work. However, the Second Circuit has addressed similar issues and found them irrelevant in the taxicab exemption inquiry.  *Id*. The Named Plaintiffs in this case – in contrast to the limousine drivers in *Munoz-Gonzalez* – are clearly and undeniably drivers who provide services to a company "engaged in the business of operating taxicabs." 29 U.S.C. § 213(b)(17).

Therefore, the Court should apply the taxicab exemption to conclude that the Plaintiffs' FLSA claims are improper. As the Second Circuit stated, "A taxicab is a taxicab is a taxicab; how a company markets its services or products does not change what it is for purposes of the FLSA." *Id*. at 219.

---

[5] Plaintiffs recognize that Irving Holdings' paratransit drivers provide *non-fixed route* transportation services. *See* Amended Complaint ¶ 3

## IV.    DEFENDANT'S OBJECTIONS TO PLAINTIFFS' PROPOSED NOTICE

**A.    Notice should not be sent to drivers who have signed by arbitration agreements.**

Irving Holdings reasserts that Plaintiffs' motion for conditional certification should be denied. In the alternative event that this Court determines conditional certification appropriate, Defendant objects to notice being sent to any driver who signed an arbitration agreement and class action waiver. All such drivers are referred to herein as "Arbitration Drivers."

As a preliminary note, issues of arbitrability should be resolved at the outset, even before considering conditional certification. *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 376 (5th Cir. 2016); *Edwards v. Doordash, Inc.*, 888 F.3d 738, 742 (5th Cir. 2018). Further determining whether claims have to be arbitrated prior to conditional certification closely aligns with the national policy favoring arbitration embodied by the FAA. *See Reyna* 839 F.3d at 378; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011).

Irving Holdings has an arbitration program for all taxicab drivers.[6] **App. 01**, ¶ 2. As a condition of providing traditional or paratransit taxicab services, all drivers agree to arbitrate any and all disputes arising from their contracts with Irving Holdings. **App. 05**, ¶ 14 and **App. 39-42**. Furthermore, under this agreement, Arbitration Drivers have voluntarily entered into a collective action waiver.[7] However, based on the Plaintiffs' proposed class, if this Court grants conditional certification many of these drivers would receive notice of this collective action.

Under a recent Fifth Circuit pronouncement, a collective action notice should not be provided to individuals with arbitration agreements. *See In re JPMorgan Chase & Co*. 916 F.3d 494, 502 (5th Cir. 2019). The *JPMorgan* court, relying on the Supreme Court's holding in

---

[6] Neither Mr. Bankete nor Mr. Kalenga signed an arbitration agreement. By way of example, an executed arbitration agreement is attached hereto. The signatory for the attached agreement, Mr. Ali Omar Mohamed, is a current DART paratransit driver. **App. 39-42.**
[7] *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) (acknowledging validity of collective action waivers).

*Hoffman-La Roche*, held that district courts are not given discretion to send or require notice of a pending FLSA collective action to persons who are unable to join the action because of a binding arbitration agreement.[8] *Id.* at 504 (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989)). Thus, if Irving Holdings demonstrates that a valid arbitration agreement exists, it would be improper for drivers bound by the agreement to receive notice of this collective action.

Determining whether a valid arbitration agreement exists to cover the disputed claims is a two-step inquiry: (1) whether there is a valid arbitration agreement; and (2) whether the dispute falls within the scope of the valid agreement. *See Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). However, if the agreement contains a delegation clause, the court performs only the first step – "an analysis of contract formation" – "[b]ut the only question, after finding that there is a valid agreement, is whether the purported delegation clause is in fact a delegation clause." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016))

Determining whether there is a valid arbitration agreement is a question of state contract law. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 428 (5th Cir. 2004); *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Pursuant to Texas law, a valid arbitration agreement must contain: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding. *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) (quoting *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 n.17 (5th Cir. 2002)).

All contractual prerequisites for a valid arbitration agreement are present in this case. Indeed, all Arbitration Drivers received a copy of the arbitration agreement and signed the

---

[8] The Fifth Circuit also applied the same logic to prevent the discovery of contact information for individuals bound by arbitration agreements. *See In re JPMorgan Chase & Co.* 916 F.3d 494, FN 23 (5th Cir. 2019).

arbitration acknowledgment. **App. 05**, ¶ 14. Further, the intent of the parties to be bound to arbitration is clear, in that the agreement contains: (1) a clause stating, "[c]overed claims shall be resolved by binding arbitration pursuant to the terms of this Agreement;" (2) a statement that, "Irving Holdings, Inc. and Contractor mutually agreement to resolve all Covered Claims according to the terms and conditions of this Amendment to Independent Contractor Agreement"; and (3) an acknowledgment page containing the signature of the drivers. **App. 39**. Therefore, a valid contract compelling arbitration exists.

Ordinarily, after determining that a valid arbitration agreement exists, the court would determine whether the disputed claims are covered by the arbitration agreement. However, the agreement at issue contains a delegation clause. As mentioned above, when a valid arbitration agreement contains a delegation clause, the court need not determine the scope of the agreement. *Edwards*, 888 F.3d at 744. Section 6(c), captioned as "Arbitrability of Particular Disputes" states:

> "The arbitrator selected under this Agreement shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this Agreement. Regardless of any other statement in this Agreement and/or any dispute resolution provider's rules or procedures, any dispute relating to the interpretation, applicability, or enforceability of the Class Action Waiver in Section 6(d) of this Agreement, or any dispute otherwise relating to whether this Agreement precludes a class or collective action proceeding, may only be determined by a Court and not an arbitrator."

**App. 39-40**. Therefore, under the terms of the agreement, questions of scope and arbitrability are properly presented to an arbitrator, rather than the court. However, the underlying question of whether the collective action waiver contained within Section 6(d), is enforceable, is properly presented to this court. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) (upholding employees' arbitration agreements requiring individualized arbitration proceedings instead of class or collective ones). Even absent a delegation clause, the language of the arbitration agreement

is broad enough to compel arbitration of FLSA claims. "Broad arbitration clauses...are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd*., 139 F.3d 1061, 1067 (5th Cir. 1998). Accordingly, Arbitration Drivers should not receive notice of this collective action.

**B.    Defendant's objections to Plaintiffs' proposed class definition.**

Defendant reasserts its argument that the motion for conditional certification should be denied. In the event this Court determines conditional certification appropriate, Defendant objects to the Plaintiffs' proposed class definition. Plaintiffs' request that notice be issued to: "[a]ll individuals who work or worked for Irving Holdings, Inc. as paratransit drivers in the State of Texas and classified as independent contractors during the three (3) period beginning on September 25, 2016 to present." *See* Plaintiffs' Motion ¶ 3, 11, 24.

In other words, Plaintiffs want to include in the putative class *all* paratransit taxicab drivers. Plaintiffs seek this expansive class despite the fact that the two Named Plaintiffs participated *only* in the DART program. While Irving Holdings provides paratransit services in various municipalities, Plaintiffs only have personal knowledge and present only evidence as to the DART paratransit program. Mr. Kalenga and Mr. Bankete have neither worked nor contracted for Irving Holdings in any paratransit program not affiliated with DART. Furthermore, various paratransit programs are each subject to separate contracts and differ in substantial and meaningful ways. For example, the programs vary as to: (1) Irving Holdings involvement as either a prime or subcontractor; (2) ownership of the vehicles; (3) pay policy; (4) scheduling practice; (5) driver training; and (6) driver expenses. The Named Plaintiffs have had no involvement and have no knowledge of the requirements of other paratransit programs. Further, Plaintiffs have offered no evidence that any driver from these programs has any interest in opting in to this case. Accordingly,

Plaintiffs' proposed class definition is impermissibly broad and any putative class should be limited to the DART program.

## C.        Defendant's objections to the form and content of Plaintiffs' proposed notice.

Plaintiffs' proposed notice and requests for multiple communications attempts with putative class members is an overt attempt to improperly recruit and increase the pool of opt-in plaintiffs. It is well within the purview of the Court to monitor the preparation and distribution of a notice sent to putative class members, and to "ensure that it is timely, accurate, and informative." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989). In exercising its discretionary authority over the notice-giving process, however, "courts must be scrupulous to respect judicial neutrality ... and must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. Courts have seen fit to modify, or even dictate, the form and content of a notice sent to putative class members. *See Solis v. Hotels.com Texas Inc.*, No. 3-03-CV-618-L, 2003 WL 22272008, at *2-4 (N.D. Tex. Oct. 1, 2003). Here, Plaintiffs' proposed notice methods and requested notice processes are an overt attempt to solicit, advertise, and otherwise seek out participation in this lawsuit. Defendant reasserts that conditional certification is improper and that notice should not be sent to any Irving Holdings driver.

In the interim, Defendant states its specific objections to Plaintiffs' proposed notice. First, Irving Holdings requests the addition of a section as to why it disputes the Plaintiffs' claims. *Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008). As currently constructed, the proposed notice contains no explanation as to why Irving Holdings disputes the plaintiff claims.

Second, Irving Holdings objects to the notice including the case caption in the notice. Use of a case caption is likely to be misunderstood as judicial sponsorship or merit. *In re Wells Fargo*

*Wage and Hour Employment Practices Litigation (No. III),* No. H-11-2266, 2013 WL 2180014, at *5 (S.D. Tex. 2013).

Third, Irving Holdings requests the addition of a statement that any opt-in plaintiffs' rights are subject to a final determination that such individuals are similarly situated (final certification) and that there is no assurance that the Court will grant relief in the lawsuit. *Hamadou v. Hess Corp.,* 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013); *Reyes v. Quality Logging, Inc.,* 52 F. Supp. 3d 849, 849 (S.D. Tex. Oct. 10, 2014).

Fourth, Irving Holdings objects to the statement "you were classified as an independent contractor and failed to receive compensation for all hours worked, including minimum wage and overtime." *See* Plaintiffs' App. 27. Such a statement prematurely presumes a legal and factual determination that paratransit drivers are owed overtime payments.

Fifth, Irving Holdings requests the addition of a statement that opt-in plaintiffs are bound by the judgment, whether favorable or unfavorable, and waive the ability to file a separate lawsuit on the same claims. *In re Wells Fargo*, 2013 WL 2180014, at *6-7.

Based on the foregoing objections, if this Court determines that conditional certification is appropriate, Defendant requests that this Court authorize the proposed notice attached hereto as Exhibit B. **App. 43-46**.

## D.    Defendant's objections to Plaintiffs' proposed method of effectuating notice.

Defendant reasserts its argument that the motion for conditional certification should be denied. In the event this Court determines conditional certification appropriate, Defendant objects to the Plaintiffs' proposed method of circulating notice to potential plaintiffs and requests that such methods be modified.

First, Defendant objects to Plaintiffs' request to place scripted phone calls to potential opt-in Plaintiffs. Without evidence as to why other methods of notice would be ineffective, Plaintiffs'

request to call potential plaintiffs is unnecessary and inappropriate. *In re Wells Fargo*, 2013 WL 2180014, at *3. Further, recorded or scripted phone calls are not necessary to effectuate notice. *Id*. Under no circumstance should Plaintiffs' counsel be permitted to call putative class members. Directly contacting individual members of the putative class has the potential of stirring up litigation through unwarranted solicitation. *See Valcho v. Dallas County Hosp. Dist*., 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008).

Second, Defendant objects to the Plaintiffs' proposed 90-day opt-in period. Plaintiffs present no argument on why such a length is appropriate. Although opt-in periods can, most courts appear to default to a notice period of 60 days, unless potential plaintiffs are difficult to contact because of their locations or other extenuating factors warrant additional time. *McCloud v. McClinton Energy Group, L.L.C.*, 7:14-CV-120, 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015). Based on the lack of evidence that extenuating factors warrant additional time, Defendant proposes a 60-day opt-in period.

Third, Defendant objects to Plaintiffs' proposed follow up notice after 30 days. Various courts have noted that when there is not a compelling reason to the contrary, reminder notices have the potential to be interpreted as encouragement by the Court to join the lawsuit. *See*, e.g., *Garcia v. TWC Admin., LLC*, No. 14-CV-985, 2015 WL 1737932, at *4 (W.D. Tex. 2015) (*citing Guzelgurgenli v. Prime Time Specials, Inc*., 883 F. Supp. 2d 340, 357–58 (E.D.N.Y. 2012); *see In re Wells Fargo*, 2013 WL 2180014, at *1. Here, Plaintiffs present no reason why a follow up notice is necessary under the circumstance or why traditional forms of notice would be inadequate. Further, a reminder notice has the potential of being interpreted as Court encouragement to join this lawsuit.

Further, Plaintiffs seek approval to maintain the website "ihlawsuit.com" dedicated to "posting the proposed Notice and Consent Form." *See* Plaintiff Motion ¶ 23. However, Plaintiffs

provide no indication of what this website would look like or how it will be constructed. Further Plaintiffs provide no evidence and present no argument on why maintaining a website is necessary to adequately provide notice to the class. Due to the public nature of the internet, posting class notice via a website may result in reputational harm and impact Irving Holdings' business in ways unrelated to this dispute.

**E.    Defendant's objections to Plaintiffs' requested discovery.**

In order to effectuate notice, Plaintiffs request that Irving Holdings produce the following information for the entirety of the potential opt-in class: (1) all names; (2) all known email addresses; (3) all telephone numbers (home, mobile, etc.); (4) last known address; (5) date of birth; and (6) last four digits of their Social Security Number. *See* Plaintiffs' Proposed Order ¶ 1; Plaintiffs' Motion ¶ 20-25.

However, much of this information is highly personal and privacy concerns abound in requiring disclosure of information beyond names and last known address. *See Altiep v. Food Safety Net Services, Ltd.,* No. 3:14-CV-00642-K, 2014 WL 4081213, at *6 (N.D. Tex. Aug. 18, 2014) (ordering production of just the names and last known addresses of potential plaintiffs). Inadvertent disclosure of any of the requested information, beyond name and last known address, could lead to such unintended consequences as identity theft.  *See Altiep* 2014 WL 4081213 at *6; *See Humphries v. Stream Int'l, Inc.* No. 3:03–CV–1682–D, at *7 (N.D. Tex. Feb. 13, 2004) (Boyle, J.) (slip op.) Therefore, Defendant objects to the discovery of any information beyond the potential class members name and last known address.[9]

---

[9] Irving Holdings explicitly objects to the discovery of potential plaintiff's email addresses and phone numbers. *Altiep*, 2014 WL 4081213, at *6 (denying request for telephone numbers and email addresses.) Such discovery will undoubtedly lead to unilateral communication with potential plaintiffs and will have the effect of stirring up unwarranted litigation. Further, Irving Holdings explicitly objects to the distribution of the Notice and consent form with paychecks or notices of direct deposits. *Garcia*, 2015 WL 1737932, at *5-6 ("sending notice forms along with employee paychecks is both redundant and unnecessary…)

**F.**     **Defendant requests the appointment of a third party to collect, account for, and tabulate notice responses.**

Defendant reasserts its argument that the motion for conditional certification should be denied. In the event this Court determines conditional certification appropriate, Defendant requests that this Court name an independent third party to send, collect, account for, and tabulate notice responses. *See Ghandi v. Dell Inc*, No. 1:08-CV-248-JRN, 2009 WL 3427218, at *1 (W.D. Tex. Oct. 20, 2009) ("The weight of authority suggests that [having notice sent through a third party administrator] is the better approach, and given that the Court's goal is to have the notice be as fair and impartial as possible, it would seem improper to have the notice sent from [one of the parties] in the case."); *see also, e.g.,* N.D. Tex. Civ. R. 23.3(b). Defendant requests that the parties be given 21 days from entry of any such order to confer and submit an agreed third party administrator for approval.

## V.     CONCLUSION

Based on the foregoing, Defendant Irving Holdings respectfully requests that Plaintiffs' Motion for Conditional Certification and Judicial Notice be denied. Alternatively, Irving Holdings requests that its objections to Plaintiffs' proposed notice be sustained.

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By:    */s/ Mark A. Shoffner*
Mark A. Shoffner
State Bar No. 24037490
mshoffner@bellnunnally.com
Mason G. Jones
State Bar No. 24116586
mjones@bellnunnally.com

2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
Tel: 214/740-1400
Fax: 214/740-1499

**ATTORNEYS FOR DEFENDANT
IRVING HOLDINGS, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 8, 2020, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Drew N. Herrmann
Pamela G. Herrmann
Herrmann Law, PLLC
801 Cherry St., Suite 2365
Fort Worth, TX 76102

Harold L. Lichten
Zachary L. Rubin
Lichten & Liss-Riordan, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116

*/s/ Mark A. Shoffner*
Mark A. Shoffner

4838837_2.docx