# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DIDYME KALENGA and ARNOLD BANKETE, on behalf of themselves and all others similarly situated | § § § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-1969-S |
| IRVING HOLDINGS, INC. | § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Plaintiffs Didyme Kalenga and Arnold Bankete's Motion for Expedited Conditional Certification of Collective Action and Judicially-Supervised Notice Under Section 216(b) (the "Motion for Conditional Certification") [ECF No. 21], and Motion for a Protective Order, an Order Permitting Corrective Notices, and Equitable Tolling (the "Motion for Protective Order") [ECF No. 28]. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Conditional Certification, and **DENIES** the Motion for Protective Order.

### I. BACKGROUND

Plaintiffs Didyme Kalenga ("Kalenga") and Arnold Bankete ("Bankete") (collectively, "Plaintiffs") bring this collective action under the Fair Labor Standards Act ("FLSA") against Defendant Irving Holdings, Inc. ("Defendant"), alleging that Defendant misclassified them and other paratransit drivers as independent contractors, thereby denying them statutory minimum wages and overtime. *See* Am. Compl. 1. Specifically, Plaintiffs purport to be suing "on behalf of all similarly situated individuals who drive (or drove) vehicles to provide paratransit and other non-fixed route transportation services on behalf of Defendant," other than "taxicab drivers." *Id.* ¶ 3 & n.2.

According to Plaintiffs, Defendant provides taxicab, paratransit, and other non-fixed route transportation services in the Greater Dallas-Fort Worth area, and relies upon paratransit drivers, whom it classifies as independent contractors. *See id.* ¶ 15. Plaintiffs provided such "paratransit services in [Defendant's Dallas Area Rapid Transit ('DART')] program." Def.'s App. 2. "[D]rivers are paid at a flat rate for rides [of] five miles or less and a progressive rate for each mile thereafter." *Id.* at 4. Plaintiffs contend, however, that Defendant deducts a "stand fee" for the use of Defendant's vehicle, which ranges from approximately $350 to $500 per week, and does not reimburse the drivers for "gasoline[,] oil[,] and some maintenance expenses." Am. Compl. ¶¶ 20-21. Moreover, Plaintiffs allege that they had to work in excess of seventy hours per week to complete assignments, while receiving a wage that was below the minimum wage. *See id.* ¶¶ 17-18; *see also id.* ¶ 21 (explaining that Kalenga received $58.88 for 36 hours of work in July 2019).

On November 27, 2019, Plaintiffs filed the present Motion for Conditional Certification, defining the proposed class as:

> All individuals who work or worked for Irving Holdings, Inc. as paratransit drivers [other than drivers performing work solely as taxicab drivers] in the State of Texas and classified as independent contractors ("Contractors") during the three (3) period[s] beginning on September 25, 2016 to present.

Mot. for Conditional Certification 3 (footnote omitted). Defendant filed their opposition to this Motion on January 8, 2020, and asserted, among other things, that Defendant "recently implemented an arbitration program" pursuant to which "all . . . drivers . . . agreed to arbitrate any and all claims they have or may have against [Defendant]." Resp. in Opp. to Mot. for Conditional Certification ("Resp.") 13-14; Def.'s App. 5. Plaintiffs responded by filing the Motion for Protective Order, where they argue that the arbitration agreements "constitute[] improper, misleading[,] and coercive communications [that] require prompt remedial action by the Court"—

2

e.g., the invalidation of those arbitration agreements. Mot. for Protective Order 2. Both Motions are now ripe and before the Court.

## II. LEGAL STANDARD

The FLSA provides that:

> An action . . . may be maintained . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he [or she] gives his [or her] consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Unlike class actions brought under Federal Rule of Civil Procedure 23, classes under § 216(b) are opt-in classes, requiring any employee wishing to become a party to the action to "opt in" (rather than "opt out") by filing his or her consent with the court in which the action is brought. *See id.*

As the Fifth Circuit has not set forth a legal standard for determining the propriety of class certification under the FLSA, *see Portillo v. Permanent Workers, L.L.C.*, 662 F. App'x 277, 279-80 (5th Cir. 2016), the Court applies the two-stage "*Lusardi* approach," which is followed by a majority of federal courts, including this district, *see Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 758 (N.D. Tex. 2013). During the first stage of the *Lusardi* approach, the "notice" stage:

> [T]he plaintiff moves for conditional certification of his or her collective action. The district court then decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action.

*Portillo*, 662 F. App'x at 280 (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 921 n.2 (5th Cir. 2008)). Because plaintiffs seeking conditional certification need not identify other hypothetical collective action members, the notice stage standard is considered to be "fairly lenient." *Id.* (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). The decision whether to

3

conditionally certify "lends itself to ad hoc analysis on a case-by-case basis," but courts typically grant certification. *Id.* (quoting *Mooney*, 54 F.3d at 1213). Upon grant of conditional certification, "notice of the action should be given to potential class members," allowing them the opportunity to opt-in to the collective action. *Id.* (quoting *Mooney*, 54 F.3d at 1214); 29 U.S.C. § 216(b).

### III. ANALYSIS
#### A. *Conditional Certification*

At the notice stage, a plaintiff must provide substantial allegations showing that: (1) there are other potential class members similarly situated with respect to their job requirements and pay provisions; (2) the potential class members were "together the victims of a single decision, policy, or plan infected by discrimination"; and (3) there are "similarly situated" potential class members who wish to opt in. *See Lee*, 980 F. Supp. 2d at 765 (internal quotation marks omitted) (quoting *Clark v. City of Fort Worth*, 800 F. Supp. 2d 776, 779 (N.D. Tex. 2011)); *see also Keeton v. Found. Energy Mgmt., LLC*, Civ. A. No. 3:18-CV-01876-G, 2020 WL 487498, at *3 (N.D. Tex. Jan. 30, 2020) (citation omitted). Within the proposed potential class, the "positions need not be identical, but [must be] similar." *Barnett v. Countrywide Credit Indus., Inc.*, No. CIV.A. 3:01-CV-1182-M, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002) (internal quotation marks omitted) (quoting *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994)). "[W]hile the notice stage typically results in conditional certification, it is by no means mandatory." *Lee*, 980 F. Supp. 2d at 759 (citations omitted).

#### (1) *Arbitration Agreements*

Before determining whether to conditionally certify a collective action, a district court must determine whether an agreement to arbitrate requires plaintiff's claims to be arbitrated, *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 377-78 (5th Cir. 2016), because, in the Fifth Circuit, "district courts may not send notice to an employee with a valid arbitration agreement unless the

4

record shows that nothing in the agreement would prohibit that employee from participating in the collective action," *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019). "'Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court,'" and the party seeking to rely on arbitration bears the burden of "'show[ing] that the agreement meets all of the requisite contract elements.'" *Id.* (quoting *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018)). Importantly, "if there is a genuine dispute as to the existence or validity of an arbitration agreement, an employer that seeks to avoid a collective action, *as to a particular employee*, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement *for that employee*." *Id.* at 502-03 (emphases added).

Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba*, 892 F.3d at 689 (citation omitted); *see also USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). In the present case, however, Defendant submitted little evidence to show that members of the proposed class entered into valid arbitration agreementa. In fact, Defendant submitted no more than (1) an affidavit that states that it "*recently implemented* an arbitration program," Def.'s App. 5 (emphasis added), and (2) a copy of one such arbitration agreement for one paratransit driver, *see id.* at 39-42. Even if the sole agreement Defendant produced is valid, *but see* Mot. for Protective Order 1 (challenging the arbitration agreement for lack of consideration), Defendant's own evidence casts doubt as to whether "all [its] drivers – traditional and paratransit – have agreed to arbitrate any and all claims they have or may have against [Defendant]," Def.'s App. 5, as even Defendant concedes that Plaintiffs did not sign an arbitration agreement, *see* Resp. 13 n.6. The effect of the arbitration agreements is also ambiguous

5

because Plaintiffs seek to give notice to Defendant's current and former paratransit drivers from September 25, 2016 to present, *see* Mot. for Conditional Certification 3, while Defendant implemented its arbitration program "recently," Def.'s App. 5. These ambiguities are sufficient for the Court to find that Defendant did not prove, "by a preponderance of the evidence," the existence of an arbitration agreement "as to [each] particular [paratransit driver]." *In re JPMorgan Chase*, 916 F.3d at 502-03.

Accordingly, the Court finds that there is a genuine dispute as to the existence or validity of the arbitration agreements; however, the record is presently insufficient for the Court to ensure that notice is not sent to "those who cannot ultimately participate in the collective." *In re JPMorgan Chase*, 916 F.3d at 502 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)). The Court, therefore, requires the parties to submit evidence as to each current and former paratransit driver who should not receive notice of this action because of a valid arbitration agreement within three weeks of the entry of this Memorandum Opinion and Order. *See id.* ("The court should permit submission of additional evidence, carefully limited to the disputed facts, at the conditional-certification stage.").

### (2) *Similarly Situated*

Having determined that with proper evidence notice would not be sent to individuals with a valid arbitration agreement, the Court now turns to whether Plaintiffs made substantial allegations that there are other potential class members similarly situated with respect to their job requirements and pay provisions. *See Lee*, 980 F. Supp. 2d at 765. Plaintiffs submitted affidavits[1] stating that paratransit drivers, like Plaintiffs, "are assigned routes by [Defendant] and spend [their]

---

[1] Although Defendant challenges the sufficiency of these affidavits, *see, e.g.*, Resp. 6, "courts have granted motions for notice and conditional certification with little evidentiary support, such as a single declaration from a single plaintiff." *Keeton*, 2020 WL 487498, at *4 (collecting authorities).

6

entire day driving paratransit passengers, including elderly and disabled patients, at the direction of [Defendant]." Pls.' App. 3, 15-16. Specifically, such paratransit drivers "operat[e] vehicles adapted for individuals with disabilities, pick[] up and drop[] off passengers, follow[] passenger's schedules . . . , secur[e] mobility equipment inside the vehicle, and maintain[] records." *Id.* at 3. Furthermore, Defendant concedes that "each driver is paid a flat rate for all rides five . . . miles or less and then a progressive rate for each mile thereafter." Resp. 3 (citing Def.'s App. 4).

The Court, however, finds that Plaintiffs did not submit any allegations that would suggest that there are similarly situated individuals in programs *other than* Defendant's DART program. While Plaintiffs summarily contend that Defendant has "contractual agreements with other entities," Pls.' App. 3, 15, Plaintiffs do not identify what these other programs are, whether the paratransit drivers in those programs work in excess of 40 hours or incur unreimbursed expenses, or what duties those drivers perform, *see also* Resp. 16 (explaining that the programs "vary as to: (1) [Defendant's] involvement as either a prime or subcontractor; (2) ownership of the vehicles; (3) pay policy; (4) scheduling practice, (5) driver training; and (6) driver expenses"). Moreover, nothing suggests that Plaintiffs have personal knowledge as to the circumstances of paratransit drivers in these unspecified programs. *See Lee*, 980 F. Supp. 2d at 762 (noting that "[d]eclarations must be based on personal knowledge"). Allowing notice to be sent to paratransit drivers in other programs without substantial allegations that those drivers are similarly situated would "'merely stir[] up litigation,' which is what [Supreme Court caselaw] flatly proscribes." *In re JPMorgan Chase*, 916 F.3d at 502 (quoting *Hoffman-La Roche*, 493 U.S. at 174).

Accordingly, the Court finds that Plaintiffs sufficiently alleged that the "the putative class members" in the DART program "are similarly situated in terms of job requirements and

compensation."[2] *Keeton*, 2020 WL 487498, at *6 (collecting authorities). Nonetheless, the Court finds that Plaintiffs have not met their burden with respect to Defendant's other programs.

### (3) *Single Decision, Policy, or Plan*

Additionally, the Court finds that Plaintiffs made "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan . . . ." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287 (N.D. Tex. 2012) (internal quotation marks omitted) (quoting *Mooney*, 54 F.3d at 1214 n.8). Plaintiffs attest that they and other paratransit drivers are uniformly "classified as independent contractors"; that they "regularly work[] more than forty . . . [hours] in a workweek," are not paid overtime, "are not reimbursed for the expense of gasoline," and are charged a "'stand fee' . . . for the use of [Defendant's] vehicles"; and that they often "ma[k]e less than the minimum wage" because of the "stand fee" and "unreimbursed . . . expenses." Pls.' App. 5-6, 17-18. Additionally, Defendant does not dispute that "[a]ll drivers, both traditional and paratransit, execute an independent contractor agreement prior to driving for [Defendant]." Resp. 4 (citing Def.'s App. 2). "These allegations are sufficient to demonstrate that 'it is reasonable to believe that there are other aggrieved employees who are subject to an allegedly unlawful policy or plan.'" *Cervantez v. TDT Consulting, LLC*, No. 3:18-CV-2547-S-BN, 2019 WL 3948355, at *7 (N.D. Tex. July 22, 2019) (quoting *Contreras v. Land Restoration LLC*, 1:16-CV-883-RP, 2017 WL 663560, at *6-7 (W.D. Tex. Feb. 17, 2017)), *report*

---

[2] Defendant contends that the Motion for Conditional Certification should be denied in its entirety because of variations in drivers' hours worked, job duties, geographic area, and because Plaintiffs' "FLSA claims would [purportedly] require highly individualized inquiry into whether workers were properly classified as exempt from the overtime requirements or as an independent contractor." Resp. 6-7, 10-11. The Court, however, finds that these arguments are "premature at the notification stage," *Keeton*, 2020 WL 487498, at *4, since "[c]ourts in the Fifth Circuit regularly refuse to make 'merits-based' determinations at the first stage of *Lusardi*, where this case sits procedurally." *Laney v. Clements Fluids Mgmt., LLC*, No. 6:18-CV-497-JDK-KNM, 2019 WL 2751087, at *4 (E.D. Tex. May 3, 2019) (collecting authorities); *see also Ward v. Pac. Motor Transp. Co.*, Civ. A. No. 3:05-CV-1711-P, 2005 WL 8158581, at *2 (N.D. Tex. Dec. 15, 2005) (citation omitted).

*& recommendation adopted*, No. 3:18-CV-2547-S-BN, 2019 WL 3947585 (N.D. Tex. Aug. 21, 2019).

### (4) *Desire to Opt-In*

The Court further finds that Plaintiffs sufficiently showed that "there are other similarly-situated [individuals] . . . who would desire to opt-in to the lawsuit." *Behnken v. Luminant Min. Co.*, 997 F. Supp. 2d 511, 516 (N.D. Tex. 2014). Although Plaintiffs did not submit affidavits from any potential plaintiffs, "the submission of [such] affidavits . . . is not an invariable prerequisite to conditional certification." *Robert v. S.B. S. Welding, L.L.C.*, 140 F. Supp. 3d 601, 610 (N.D. Tex. 2015) (citation omitted). The fact that two Plaintiffs are already named in this action and that they attest that "there are many current and former employees who work (or worked) for [Defendant] . . . who would join a collective action to recover their unpaid compensation . . . if they were informed of their rights to do so," Pls.' App. 8, 20, is sufficient to satisfy the lenient standard of review at this stage of the litigation, *see Cervantez*, 2019 WL 3948355, at *9.

Accordingly, the Court finds that substantial allegations support conditionally certifying a class of any paratransit "driver who has performed at least 40 hours of work for [Defendant's DART program] during any given one-week period from [September 25, 2016] to the date of this [Memorandum Opinion and] Order." *Spence v. Irving Holdings, Inc.*, Case No. 3:10-cv-142, 2010 WL 11618078, at *3 (N.D. Tex. Sept. 23, 2010) (granting conditional certification as to drivers in Defendant's Medical Transportation program).

### B. *Content of the Notice*

"The benefits of a collective action 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Behnken*, 997 F. Supp. 2d at 523 (quoting *Hoffmann-La Roche*,

9

493 U.S. at 169). As such, courts should "exercise their discretion regarding the form and content of the notice so as to ensure that the notice is accurate and that it includes information that would be needed to make an informed decision about whether to join the lawsuit." *Id.* "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality." *Hoffmann–La Roche*, 493 U.S. at 174. In this case, Defendant raises five objections to the proposed notice (the "Notice"), which are addressed in turn below.

### (1) *Defendant's Position*

Defendant "requests the addition of a section as to why it disputes the Plaintiffs' claims." Resp. 17. Plaintiffs "do not object to the inclusion of language briefly addressing Defendant's positions." Reply in Supp. to Mot. for Conditional Certification ("Reply") 9. Pursuant to the parties' agreement, the Court grants Defendant's request to include an agreed-upon explanation of Defendant's bases for disputing liability. *See Yaklin v. W-H Energy Servs., Inc.*, No. CIV. A. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008).

### (2) *Case Caption*

Defendant "objects to the . . .inclu[sion of] the case caption in the Notice," because it may "be misunderstood as judicial sponsorship or merit." Resp. 17. "[N]umerous courts in the Fifth Circuit have held that inclusion of the caption of the court in a notice does not undermine judicial neutrality." *Arceo v. Orta*, 296 F. Supp. 3d 818, 825 (N.D. Tex. 2017) (collecting authorities from within the Fifth Circuit); *but see Kilmon v. Saulsbury Indus., Inc.*, No. MO:17-CV-00099-RAJ, 2017 WL 7052328, at *3 & n.2 (W.D. Tex. Dec. 13, 2017) (collecting out-of-circuit authorities). Moreover, Plaintiffs' proposed notice states in bold that "[t]he Court has taken no position regarding the merits of the underlying claim." Pls.' App. 27. Accordingly, the Court overrules Defendant's objection to the inclusion of the case caption in the Notice.

10

### (3) *Finality of Certification*

Defendant "requests the addition of a statement that any opt-in plaintiffs' rights are subject to a final determination that such individuals are similarly situated (final certification) and that there is no assurance that the Court will grant relief in the lawsuit." Resp. 18. "Plaintiffs do not object to including a brief statement that certification is subject to final approval."[3] Reply 9. Pursuant to the parties' agreement, the Court grants Defendant's request to include this statement in the Notice.

### (4) *Eligibility to Join Class*

Defendant "objects to the statement 'you were classified as an independent contractor and failed to receive compensation for all hours worked, including minimum wage and overtime,'" contending that the statement "prematurely presumes a legal and factual determination that paratransit drivers are owed overtime payments." Resp. 18 (citing Pls.' App. 27). This statement, however, appears under the caption, "You May Be Eligible to Join This Lawsuit *If,*" Pls.' App. 27 (emphasis added), which shows that it is conditional upon a future determination. Moreover, Defendant cited no authority for omitting or modifying this statement, and the Court has found none. Therefore, the Court overrules this objection.

### (5) *Effect of Joining Class*

Defendant "requests the addition of a statement that opt-in plaintiffs are bound by the judgment, whether favorable or unfavorable, and waive the ability to file a separate lawsuit on the same claims." Resp. 18. "Plaintiffs do not object to the inclusion of brief language notifying opt-ins that they will be bound by the judgment," but oppose the "waiver language," contending that

---

[3] "Plaintiffs object to Defendant's attempt to include language regarding responsibility of costs that may chill participation." Reply 9-10. This objection is confusing, as Plaintiffs' own form notifies the potential class members that they "may be required to pay a proportional share of taxable court costs" should Defendant prevail. *See* Pls.' App. 28. Regardless, the Court finds that readers should be informed that they "may be required to pay a proportional share of taxable court costs." *Cervantez*, 2019 WL 3948355, at *11.

11

it is "unnecessary and confusing." Reply 10. Pursuant to the parties' agreement, the Court grants Defendant's request to include an agreed-upon statement in the Notice advising the readers that they will be bound by the judgment, whether favorable or unfavorable. Additionally, the Court finds that readers should be notified that joining the class will prevent them from filing a separate lawsuit, as it facilitates their ability "to make an informed decision about whether to join the lawsuit." *Arceo*, 296 F. Supp. 3d at 825 (citations omitted).

### C.  *Consent to Join FLSA Lawsuit Form*

Plaintiffs attached a proposed Consent to Join FLSA Lawsuit form (the "Consent"), *see* Pls.' App. 29, and Defendant does not object to Plaintiffs' proposed form. The Court "finds that the Consent . . . is sufficient as written and . . . authorize[s] [Plaintiffs] to disseminate the form." *Cervantez*, 2019 WL 3948355, at *11.

### D.  *Method of Effectuating Notice*

In overseeing the notice-giving process, the Court "must be scrupulous to respect judicial neutrality," *Hoffman-La Roche*, 493 U.S. at 174, and to avoid "stir[ring] up litigation," *In re JPMorgan Chase*, 916 F.3d at 502 (quoting *Hoffman-La Roche*, 493 U.S. at 174). Here, Plaintiffs propose ensuring that potential class members receive adequate notice by requesting that the Court: (1) compel Defendant to produce employees' contact information; (2) allow Plaintiffs to call potential class members to verify their contact information; (3) allow Plaintiffs to provide the Notice and the Consent via mail, email, and text message; (4) allow Plaintiffs to send potential class members a reminder by mail, email, and text message after thirty days; (5) require Defendant to distribute the Notice and the Consent with paychecks or notices of direct deposit; (6) allow Plaintiffs to maintain a website dedicated to posting the Notice and the Consent; and (7) provide for a ninety-day opt-in period. *See* Mot. for Conditional Certification 20-23. The Court addresses each of these proposals below.

12

### (1) *Production of Information for Notice Distribution*

"Plaintiffs request that Defendant be ordered to produce within ten . . . days . . . an Excel file containing the names, all known addresses, all email addresses, and all telephone numbers (home, mobile, etc.) of all the potential opt-in plaintiffs."[4] Mot. for Conditional Certification 21. "Courts have routinely ordered employers to produce such information for the purpose of transmitting a Notice." *Cervantez*, 2019 WL 3948355, at *11 (collecting authorities). Accordingly, the Court orders Defendant to produce, within two weeks of the entry of this Memorandum Opinion and Order, an Excel file containing the names, all known addresses, all email addresses, and all telephone numbers (home, mobile, etc.) of all the potential opt-in plaintiffs.

### (2) *Permission to Call Potential Class Members*

Plaintiffs would like to call potential class members to "verif[y] . . . addresses or email addresses," and are willing to "agree on a reasonable script." Mot. for Conditional Certification 21. Although Defendant opposes this request, *see* Resp. 18-19, courts permit Plaintiffs to contact class members "for the purpose of ensuring receipt of the [N]otice and [C]onsent forms." *Contreras*, 2017 WL 663560, at *8; *Page v. Crescent Directional Drilling, L.P.*, 5:15-CV-193-RP, 2015 WL 12660425, at *4 (W.D. Tex. Dec. 10, 2015). However, "Plaintiff[s] may only call potential class members once" and must adhere "directly to the script to be agreed upon, in good faith, by Defendant and Plaintiff[s]." *Page*, 2015 WL 12660425, at *4.

---

[4] Plaintiffs' proposed order, however, requests an order compelling Defendant to produce "name, last known address, all known e-mail addresses, all known telephone number(s), dates they provided paratransit services for Defendant, date of birth, and last four digits of their Social Security Number for each such person within five business days of the Order to be entered on this motion." Unlike the request contained in Plaintiffs' Motion, the Court finds that this request is overbroad and unnecessary for the purpose of giving notice to potential class members. *See also* Resp. 20 (citing authorities suggesting that the excessive amount of information increases the risk of identity theft).

13

(3) *Communication from Plaintiffs by Mail, Email, and Text Message*

Plaintiffs propose providing the Notice and the Consent to all potential class members by mail, email, and text message. *See* Mot. for Conditional Certification 21 & n.21. Defendant does not oppose these methods of communication, but requests that the Notice come from an independent administrator, rather than Plaintiff. *See* Resp. 21. Although some courts have approved the use of third-party administrators, *see, e.g., Gomez v. Mi Cocina Ltd.*, Civ. A. No. 3:14-CV-02934-P, 2015 WL 13852378, at *7 (N.D. Tex. Apr. 23, 2015); *Spence v. Irving Holdings, Inc.*, No. 3:10-CV-142, 2010 WL 5609023, at *1 (N.D. Tex. Dec. 15, 2010), Defendant does not articulate any reasons for appointing a third-party administrator in this case, *see* Resp. 21, and courts "routinely allow[] [p]laintiffs to issue notice on their own behalf," *Lewis v. Brazos Rock, Inc.*, CV NO. 4:15-CV-13, 2015 WL 13805118, at *5 (W.D. Tex. Oct. 14, 2015) (collecting authorities). "Absent a . . . reason to do so, the Court will not add to the expense of this litigation by requiring that notice be sent through a third-party administrator." *Id.*

(4) *Reminders*

As to Plaintiffs' request for permission to provide a reminder notice after thirty days, *see* Mot. for Conditional Certification 22, the Court agrees with Defendant that Plaintiffs did not demonstrate that reminder notice is necessary, *see* Resp. 19. Plaintiffs offer no reason for the reminder other than that it would help "maximize participation," Reply 9, and courts have denied requests for reminder notices absent a compelling reason for such notice, *see Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 776 (S.D. Tex. 2015) (citation omitted). Accordingly, the Court holds that a reminder notice shall not be issued to potential class members.

(5) *Distributing Notice with Paychecks or Notices of Direct Deposit*

Defendant further objects to Plaintiffs' request that "Defendant be ordered to distribute the Notice and Consent form with paychecks or notices of direct deposit of all current [potential]

14

[c]lass [m]embers." Mot. for Conditional Certification 22-23; Resp. 20 n.9. The Court sustains Defendant's objection, as current drivers will already be contacted via mail, email, and/or text message, making further notification "redundant and unnecessary." *Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *5 (W.D. Tex. Apr. 16, 2015); *see also Arceo*, 296 F. Supp. 3d at 826 (allowing potential class members to be contacted via mail only).

### (6) *Website*

In addition to requesting that notice be sent via mail, email, and text message, Plaintiffs request leave to maintain a website "dedicated to posting the proposed Notice and Consent Form" and to allow opt-in plaintiffs "the opportunity to electronically sign their consent forms." Mot. for Conditional Certification 23. Defendant opposes this request, contending that the website is unnecessary and may harm Defendant's reputation, but does not oppose allowing opt-in plaintiffs to electronically sign their consent forms. *See* Resp. 19-20. Numerous courts have permitted Plaintiffs to maintain such a website, *see, e.g., Cervantez*, 2019 WL 3948355, at *10; *Qazi v. Stage Stores, Inc.*, Civ. A. No. 4:18-CV-780, 2019 WL 2523564, at *3 (S.D. Tex. June 18, 2019), and the Court will grant Plaintiffs leave to maintain such a website in this case. However, the Court orders the parties to confer and agree on the contents of this website to ensure that it is neutral and does not unduly stir up litigation.

### (7) *Opt-in Period*

Defendant's "final objection—that a 90 day opt-in period is too long—also lacks force," as "[d]istrict courts commonly approve notice periods of 90 days in FLSA class certification actions." *Arceo*, 296 F. Supp. 3d at 826. Therefore, the Court overrules this objection.

### E. *Equitable Tolling*

In their Motion for Protective Order, Plaintiffs ask the Court to toll the FLSA statute of limitations, arguing that, by implementing its arbitration program, Defendant "manufacture[d] an

15

issue that is likely to cause delay." Mot. for Protective Order 10-11. For the following reasons, the Court denies Plaintiffs' request for equitable tolling.

The applicable statute of limitations period under the FLSA is outlined in 29 U.S.C. § 255. Section 255 provides that an action must commence within two years after the cause of action accrued if the violation is "unwillful" and within three years after it accrued if the violation was "willful." *Id.* A cause of action begins to "accrue[] at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir. 1987), *modified on other grounds*, 826 F.2d 2 (5th Cir. 1987). In a collective action, the action is "commenced" in the case of an opt-in plaintiff on the date a written consent is filed. *See Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 803 (E.D. La. 2007) (citing *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983)).

"Equitable tolling 'is a narrow exception . . . that should be "applied sparingly,"'" *Sandoz v. Cingular Wireless, L.L.C.*, 700 F. App'x 317, 320 (5th Cir. 2017) (quoting *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011)), and only in "'rare and exceptional' cases." *Davis v. Capital One Home Loans, LLC*, Civ. A. No. 3:17-CV-3236-G, 2019 WL 459644, at *6 (N.D. Tex. Feb. 9, 2019) (quoting *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002)). "For this narrow exception to apply, a plaintiff must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Sandoz*, 700 F. App'x at 320 (quoting *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016)). "This standard requires 'reasonable diligence,' not 'maximum feasible diligence,' and an extraordinary circumstance that derives from some 'external obstacle to timely filing . . . beyond [the plaintiff's] control,' not from self-inflicted delay." *Id.* (alterations in

16

original) (footnote omitted) (first quoting *Holland v. Florida*, 560 U.S. 631, 653 (2010); and then quoting *Menominee*, 136 S. Ct. at 756).

For instance, courts have tolled the FLSA statute of limitations where the action was delayed because the Court needed to "clarify the membership of [an LLC]" to "ascertain[] the parties before the Court," *Shidler v. Alarm Sec. Grp., LLC*, 919 F. Supp. 2d 827, 830 (S.D. Tex. 2012), or where the action was stayed because the United States brought separate criminal charges against the defendants, *see Antonio-Morales v. Bimbo's Best Produce, Inc.*, No. Civ. A. 8:5105, 2009 WL 1591172, at *2 (E.D. La. Apr. 20, 2009). On the other hand, courts do not toll limitations in FLSA cases solely because of a delay in resolving the plaintiff's motion for conditional certification, *see Orozco v. Anamia's Tex-Mex Inc.*, Civ. A. No. 3:15-CV-2800-L-BK, 2016 WL 6311237, at *2 (N.D. Tex. Oct. 6, 2016) (collecting authorities), even if that delay is purportedly caused by a defendant's objections to the proposed notice, refusal to comply with discovery, or the filing of "unnecessary motions," *Gomez v. Mi Cocina Ltd.*, Civ. A. No. 3:14-CV-2934-L, 2016 WL 11665867, at *13 (N.D. Tex. Aug. 22, 2016) (collecting authorities).

The Court finds that Plaintiffs have not demonstrated that rare and exceptional circumstances require equitable tolling in this case. While Plaintiffs contend that Defendant's decision to adopt an arbitration program justifies equitable tolling, *see* Reply 8; Mot. for Protective Order 10-11, a delay caused by even "unnecessary objections" and "unnecessary motions" is not sufficient to establish the rare and exceptional circumstances warranting equitable relief, *see Gomez*, 2016 WL 11665867, at *13. Regardless, the existence of the arbitration agreements merely delays the Court's resolution of one aspect of the pending Motion for Conditional Certification by a few months, and such delays do not justify equitable tolling. *See, e.g., Cervantez*, 2019 WL 3948355, at *12; *Orozco*, 2016 WL 6311237, at *2. Moreover, Plaintiffs did

17

"not provide evidence as to [Defendant's] intent to willfully interfere with the ability of potential plaintiffs to assert their rights." *Id.* (citation omitted). Accordingly, the Court denies Plaintiffs' request for equitable tolling of the FLSA statute of limitations.

### F. *Motion for Protective Order and Corrective Notice*

As in Rule 23 class actions, district courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions. *See Hoffman-La Roche*, 493 U.S. at 171. However,

> the First Amendment requires the Court to tailor any restrictions on a party's ability to speak with absent class members. Courts must base any order limiting communications between parties and potential class members on a *clear record* and *specific findings* that reflect a weighing of the need for a limitation and the potential interference with the rights of parties.

*Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) (emphasis added) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981)). Here, Plaintiffs contend that Defendant engaged in impermissible communication with potential class members by sending them "addenda to their independent contractor agreements" to require "them to submit their claims to individual arbitration." Mot. for Protective Order 1. As noted above, however, the details regarding Defendant's arbitration agreements are scant, *see supra* § III(A)(1), and do not provide a clear record for the Court to determine whether it should restrict any parties' further communication with potential class members or require that a corrective notice be issued. Given that the Court orders the parties to submit additional evidence as to the arbitration agreements, the Court denies Plaintiffs' Motion for Protective Order and Corrective Notice without prejudice to it being reasserted once a clear record has been developed.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** the Motion for Expedited Conditional Certification of Collective Action and Judicially-Supervised

18

Notice Under Section 216(b). Consistent with the procedures outlined above, Notice shall be provided to:

> All individuals who work or worked for Irving Holdings, Inc. in the Dallas Area Rapid Transit program as paratransit drivers (other than drivers performing work solely as taxicab drivers) in the State of Texas and are or were classified as independent contractors during the three (3) periods beginning on September 25, 2016 to present, and who did not enter into a valid arbitration agreement.

Furthermore, the Court **ORDERS** Defendant to produce, by **June 15, 2020**, an Excel file containing the names, all known addresses, all email addresses, and all telephone numbers (home, mobile, etc.) of all the potential opt-in plaintiffs.[5]

Unless otherwise agreed to by the parties, the Court **ORDERS** Defendant to submit evidence and briefing demonstrating each potential opt-in plaintiff who should not receive notice because of a valid arbitration agreement by **June 22, 2020**. Plaintiffs must file their Response within two weeks of the filing of the additional evidence. No replies will be permitted.

The Court **ORDERS** the parties to confer and propose a scheduling order for the mailing and opt-in dates for potential class members not affected by the alleged arbitration agreements by **June 15, 2020**. If the Court determines that any given arbitration agreement is invalid, the opt-in period for that plaintiff will begin on the date of the Order invalidating that arbitration agreement.

Additionally, the Court **ORDERS** the parties to confer and submit a jointly proposed written notice consistent with this Memorandum Opinion and Order to the Court by **June 15, 2020**. Should the parties fail to reach an agreement on the construction of the notice, each party shall submit a separate proposed notice to the Court for its consideration by **June 15, 2020**.

---

[5] The Excel file should also identify whether a particular paratransit driver has signed an arbitration agreement.

19

Finally, the Court **DENIES** Plaintiffs' Motion for a Protective Order, an Order Permitting Corrective Notices, and Equitable Tolling **WITHOUT PREJUDICE** to it being reasserted once a clear record of the alleged pre-certification communication has been developed.

**SO ORDERED.**

SIGNED June 1, 2020.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE